661 So.2d 1223 (1995)
HEALTH CARE MANAGEMENT CONSULTING, INC., a Florida corporation, Appellant,
v.
William J. McCOMBES, Appellee.
No. 95-1578.
District Court of Appeal of Florida, First District.
September 22, 1995.
Rehearing Denied November 20, 1995.
*1224 Robert G. Riegal, Jr., and Kelly B. Pritchard of Coffman, Coleman, Andrews & Grogran, P.A., Jacksonville, for Appellant.
Joseph S. Farley, Jr. of Mahon & Farley, P.A., Jacksonville, for Appellee.
MICKLE, Judge.
We review a non-final order dissolving a temporary injunction to enforce a covenant not to compete in an employment contract. We reverse the order and remand with directions to the trial court to reinstate the injunction with the following modifications as set forth below.
Health Care Management Consulting, Inc. (HCMC) was formed in 1977. One of its purposes is to provide consulting services to home health care agencies in such areas as Medicare reimbursement (bonuses/pensions, cash flow management, accounting systems, tax planning, cost report preparation, documentation) and clinical operations (allowable and non-allowable services such as nursing). HCMC's primary method of soliciting clients is through the presentation of seminars covering the topics of Medicare reimbursement as well as clinical and management matters related to the home health care industry. Dwight Cenac, owner and president of HCMC, personally consults with clients on application of the federal Medicare regulations to their individual home health care agencies.
On August 20, 1990, Charles McCombes (McCombes) was hired to perform marketing duties for HCMC. His primary job responsibility was to cultivate and develop new clientele. Prior to his employment with HCMC, McCombes had not performed any type of work in the home health care industry. He had, however, been employed on occasion in the business of conducting motivational and training seminars for various organizations. While employed with HCMC, McCombes worked closely with Cenac and attended numerous private client consultations. In August 1994, still employed with HCMC, McCombes formed InfoQuest Enterprises, Inc. (InfoQuest), for the purpose of presenting seminars in various subject matter areas. Some two months later, on October 8, 1994, McCombes resigned from his position with HCMC. On the date of his resignation, McCombes executed a joint general release and agreement (Agreement), whereby he agreed not to "induce, directly or indirectly, entice or lure away from HCMC, or otherwise attempt to secure any current clients of HCMC or its affiliate companies" or "compete directly or indirectly against HCMC and its affiliate companies for the period of one year from this date."
On February 7, 1995, HCMC sued McCombes, seeking damages and injunctive relief for what HCMC alleged to be McCombes' use of HCMC's trade secrets and solicitation *1225 of clientele. Specifically, HCMC alleged that HCMC's clients had received an InfoQuest brochure advertising a home health care seminar in New Orleans to be conducted on February 12-14, 1995. HCMC alleged that this brochure evinced a specific intent on the part of McCombes to reveal trade secrets developed by and belonging to HCMC and that McCombes had directly solicited HCMC's clients by telephone and mail. In a motion for temporary injunction filed in connection with the complaint, HCMC attached the affidavit of Cenac detailing the content of the alleged trade secrets. Following an ex parte hearing, the trial court issued a temporary injunction. Finding that McCombes had directly solicited clients of HCMC, that McCombes may be planning to disclose certain information developed by HCMC that constitutes a trade secret, that HCMC may be irreparably harmed by the direct solicitation and divulging of trade secrets, the trial court enjoined McCombes, his agents, employees, representatives, and any other persons acting in concert with him, from soliciting HCMC's clients and from disclosing any trade secrets of HCMC pending further order of the court, including any and all participation in the scheduled New Orleans seminar. An amended injunction, entered one day later, enjoined McCombes from soliciting HCMC's clients and from disclosing HCMC's trade secrets, but allowed the New Orleans seminar to proceed as long as McCombes did not participate.
On February 24, 1995, McCombes filed a motion to dissolve the injunction in part on the basis that HCMC had no legitimate business interests to be protected within the meaning of section 542.33, Florida Statutes, inasmuch as its purported trade secrets and confidential methodology are nothing more than its interpretations of Federal rules and regulations which fall within the public domain. On March 15, 1995, HCMC filed a motion to broaden the injunction to prevent McCombes from presenting an InfoQuest seminar in Texas scheduled for April 4-5, 1995.
Following an evidentiary hearing, the court entered an order dissolving the injunction based on the following findings: (1) McCombes is not in competition with HCMC in the field of Medicare reimbursement consulting; (2) the providing of consulting advice regarding federal regulations does not involve trade secrets; and (3) enforcement of the Agreement would be unreasonable to McCombes and the potential effects on McCombes far outweigh the potential effects on HCMC.
Section 542.33(2)(a), Florida Statutes (1989), provides in pertinent part:
[O]ne who is employed as an ... employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area ... so long as such employer continues to carry on a like business there. Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction.
Chapter 90-216, Section 1, Laws of Florida, amended section 542.33(2)(a) on June 28, 1990, by adding the following three sentences:
However, the court shall not enter an injunction contrary to the public health, safety, or welfare in any case where the injunction enforces an unreasonable covenant not to compete or where there is no showing of irreparable injury. However, use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined.
§ 542.33(2)(a), Fla. Stat. (Supp. 1990). The 1990 amendment was enacted to clarify the courts' discretion to enforce non-compete agreements. This amendment expresses the legislature's intent that covenants not to compete, although validated by the statute, are not enforceable by injunction (1) if enforcement would be contrary to the public health, safety, or welfare; (2) if the covenant is unreasonable; or (3) if the proponent is unable to show irreparable harm if the covenant were not enforced according to its terms. Jewett Orthopaedic Clinic, P.A. v. White, 629 So.2d 922 (Fla. 5th DCA 1993). The 1990 amendment restricts the availability of injunctive relief in non-compete agreement cases by requiring parties to plead and *1226 prove irreparable injury. However, the amendment did not disturb the presumption of irreparable injury in connection with the use of trade secrets, customer lists, or direct solicitation of existing customers. State Chemical Mfg. Co. v. Lopez, 642 So.2d 1127 (Fla. 3d DCA 1994).
In our view, competent and substantial evidence in the record supports the finding of the trial court that Cenac's self-professed confidential methodology of presenting and interpreting Medicare regulations to clients in the home health care industry does not constitute a trade secret. Section 688.002(4), Florida Statutes (1993), which is a part of the Uniform Trade Secrets Act, defines a "trade secret" as a "a formula, pattern, compilation, program, device, method, technique or process" that derives actual or potential independent economic value "from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" when it is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Clearly, certain processes for the assimilation and management of information might be recognized within this definition of a trade secret. See, Freedom Newspapers, Inc. v. Egly, 507 So.2d 1180, 1184 (Fla. 2d DCA 1987). Cenac's expertise, however, while the subject of confidential treatment by HCMC and Cenac, cannot be a trade secret because it principally involves the interpretation of public Medicare regulations and, as such, is "readily ascertainable by proper means" through researching the Code of Federal Regulations. See, Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989) (customer list not a trade secret because could be derived from public publications); Public Systems, Inc. v. Towry, 587 So.2d 969, 972 (Ala. 1991) (spreadsheet data program not a trade secret because data compiled from government information generally available to public).
However, we cannot so easily dismiss McCombes' solicitation of HCMC's clients for the purpose of attending the InfoQuest seminars. At the hearing below, Cenac testified that HCMC's primary source of procuring clientele is through invitations to seminars. McCombes testified that, although he did indeed solicit most all of HCMC's present and former clients to attend InfoQuest seminars, he did not intend to lure away clients from HCMC, as he has neither the desire nor the competency to provide Medicare reimbursement advice. McCombes averred that InfoQuest earns its profits by charging fees to seminar attendees with no intent to cultivate client relationships beyond the seminar. McCombes did accede, however, that the various speakers invited by InfoQuest to present lectures certainly expected to cultivate clientele from among the seminar attendees.
Where a plaintiff sufficiently demonstrates that a former employee is contacting its customers, the presumption of irreparable injury attaches. Lopez; Sun Elastic Corp. v. O.B. Industries, 603 So.2d 516 (Fla. 3d DCA 1992). Since the contacting of HCMC's clients by InfoQuest could serve to demonstrate direct solicitation of existing customers, the record supports an application of the irreparable injury presumption in favor of HCMC. We find McCombes' assertion of non-competition to be insufficient to rebut this presumption. The New Orleans InfoQuest Brochure advertised, "InfoQuest Enterprises presents an intensive seminar on the critical issues that Home Care Agencies will face in 1995 and beyond." Listed as general topics were:
Are you aware of the latest changes in the Medicare Regulations?
Has your agency "experienced" its first on-site intermediary audit?
Are you aware of the impact of the new Federal Conditions of Participation?
Is it becoming more difficult to meet payroll and make tax deposits?
Is Documentation an issue at your agency?
How is your cash flow?
Are you providing the proper mix of employee fringe benefits to retain quality employees?
Would you like to review your last quarters' interim rate report or cost report with a Medicare cost report specialist?

*1227 Are there clinical documentation issues you would like to discuss with a clinical specialist?
The brochure indicated that McCombes would be speaking on such topics as (1) improving supervisory skills; (2) the use and abuse of benefits and accruals; and (3) team health care. Other speakers included John Garcia, a reimbursement consultant, speaking on the topic of Medicare reimbursement rules and regulations and Medicare costs reports, and Janet Hoffman, a former HCMC employee and clinical consultant, addressing the topics of operational development in home care Medicare home health initiative and documentation of Medicare coverage, including nursing care.
As plainly exhibited by the New Orleans InfoQuest brochure, InfoQuest directly competes with HCMC in the production of seminars in the field of home health care Medicare reimbursement and clinical operations. The home health care InfoQuest seminars not only reap fees from attendees but also attract potential clients for reimbursement and clinical consultants directly competing with HCMC. As such, to the extent the InfoQuest home health care seminars encompass matters of Medicare reimbursement and clinical operations, the injunction must be reinstated.
We reverse and remand with directions to the trial court to reinstate the temporary injunction and to modify it so as to enjoin InfoQuest and McCombes from conducting seminars covering the topics of Medicare reimbursement and clinical operations in the home health care industry.[1]
REVERSED and REMANDED with directions.
BENTON and VAN NORTWICK, JJ., concur.
NOTES
[1] There was some evidence adduced at the hearing below that InfoQuest also conducts on-site motivational and team building seminars at home health care agencies. Cenac testified at the hearing that he was not particularly opposed to these management team building ventures. Consequently, in reinstating the injunction, we are not limiting InfoQuest's activities in this area.