[No. A094820. First Dist., Div. Four. Feb. 20, 2002.]

In re PROVIDIAN CREDIT CARD CASES.

COUNSEL

Heller, Ehrman, White & McAuliffe, Brian P. Brosnahan, Jonathan P. Hayden and D. Christopher Kerby for Defendants and Appellants Providian Financial Corporation, Providian National Bank, Providian Bank and Providian Bancorp Services.

McCutchen, Doyle, Brown & Enersen and Neil L. Shapiro for Movant and Respondent Hearst Corporation.

OPINION

KAY, P. J.—Rules 243.1 and 243.2 of the California Rules of Court[1] establish the standard and procedures for courts to employ when a request is made to seal a court record that would otherwise be public, or to unseal a record previously ordered sealed. This appeal presents the first opportunity for an examination of these rules and their operation. We conclude that these rules vest a trial court with a considerable amount of discretion in deciding whether to seal or unseal portions of a judicial record. We further conclude, in light of the strong presumption in favor of public access, that the trial court here did not abuse its discretion in deciding to unseal records over an objection that the materials constituted proprietary trade secrets.

BACKGROUND

It appears from the record that in 1998 and 1999 a number of complaints framed as class actions were filed alleging that defendants Providian Financial Corporation, Providian National Bank, Providian Bank, and Providian

---

[1] All further rule references are to the California Rules of Court.

Bancorp Services (defendants) had improperly assessed a number of fees and charges to holders of credit cards. The Judicial Council granted a petition to coordinate the actions and designated Judge Stuart Pollak of the San Francisco Superior Court the coordination trial judge (see Code Civ. Proc., § 404; rules 1529, 1540). Thereafter, and in accordance with a stipulation of the parties, the trial court filed a protective order allowing any party producing discovery to designate material as "Confidential, Subject to Court Order" if "disclosure would violate a personal, financial, or other interest protected by law, such as a trade secret or other confidential research, development, or commercial information, and that such disclosure threatens to cause serious harm that outweighs the public interest in disclosure of such information." The order further provided that "any Confidential Material shall be filed under seal," but that it was "without prejudice to the right of any Party or non-party . . . to apply to the Court for . . . modification of this Order or for any order permitting disclosure of Confidential Material beyond the terms of this Order."

In connection with plaintiffs' motion to certify the class, defendants filed under seal a large number of documents designated as confidential. About the same time believing that defendants had "vastly over-designated documents as confidential," plaintiffs moved that "all documents filed with the Court . . . be immediately unsealed and the confidential designation on such documents be removed." At this point the Hearst Corporation (Hearst), describing itself as an "intervener," moved that the protective order be "reconsidered" in light of "the strong public policy . . . in favor of . . . openness of judicial records." Defendants opposed plaintiffs' motion to unseal, claiming that it was overbroad and that granting it would compromise "confidential and proprietary information" protected by California's Uniform Trade Secrets Act (Civ. Code, §§ 3426-3426.11). The trial court denied Hearst's motion on October 18, 2000. Plaintiffs' motion was referred to a retired superior court judge acting as a referee.

Near the end of December of 2000, the referee submitted a report in which he recommended that plaintiffs' motion be granted in part, and that 67 exhibits submitted in connection with the class certification motion should be unsealed. On January 1, 2001, while the trial court was considering whether to adopt the referee's recommendations, rules 243.1 and 243.2 became effective. Based on this development, Hearst renewed its request that the trial court examine the records and unseal those materials which did not meet the requirements of the new rules for remaining immune from public access; specifically, Hearst argued that if defendants wished to continue to prevent disclosure of material they claimed constituted trade secrets, the burden of proving so was now on defendants. Defendants responded that

39 of the 67 exhibits "contain core proprietary information" and should remain confidential. To support that claim defendants submitted declarations by Dawn Greiner, a vice-president "with responsibility for marketing in Providian's Credit Card Business" and Robert Klein, a marketing consultant. The trial court returned the matter to the referee for reconsideration in light of rules 243.1 and 243.2. The referee submitted a report in which he determined that defendants "adequately identify an overriding interest in the whole of each of the following documents that overcomes the right of public access" with respect to 14 exhibits, but recommended that 25 exhibits be unsealed. Defendants objected to the latter advisory recommendation (see Code Civ. Proc., §§ 643, subd. (c), 644, subd. (b)).

The trial court's eventual order recites the procedural history of the dispute and the legal standards established by rule 243.1. After discussing the nature of the disputed documents, the court ruled: "After reviewing each document at issue with these standards in mind, and with Providian's supporting declarations as they pertain to each document, the Court concludes that none of the documents at issue should remain under seal." Defendants filed a notice of appeal the day the trial court's order was filed.[2]

REVIEW

*The Legal Standards*

Defendants are here to argue that 21 of the 25 documents ordered unsealed by the trial court contain trade secrets and proprietary information that is sufficiently sensitive and current that they should have been left protected against disclosure. Among the arguments presented by defendants concerning the examination of an unsealing order made pursuant to rules 243.1 and 243.2 is the fundamental issue of the standard of review to be employed.

In *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*NBC Subsidiary*), our Supreme Court undertook an exhaustive examination of the First Amendment issues involved with restricting or closing public access to trials. In the course of doing so it noted that "[n]umerous reviewing courts . . . have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication." (*Id.* at p. 1208, fn. 25.) Having surveyed the relevant state and federal authorities, the court formulated this rule: "[B]efore substantive courtroom proceedings are closed or transcripts are ordered sealed,

---

[2]The order is appealable as the final determination of a collateral matter in that it directs the performance of an act—i.e., unsealing—against defendants. (See *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668]; *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 826, fn. 4 [107 Cal.Rptr.2d 594]; *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410-1411 [77 Cal.Rptr.2d 395] and decisions cited.)

a trial court must hold a hearing and expressly find that (i) there exists an overriding interest supporting closure and/or sealing; (ii) there is a substantial probability that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*Id.* at pp. 1217-1218, original italics & fns. omitted.)

Rules 243.1 and 243.2 were adopted to comply with the Supreme Court's decision.[3] Rule 243.1 requires the express findings enumerated in *NBC Subsidiary* and also directs that they must be incorporated in the order sealing any part of a record. Rule 243.2 sets out the procedures to be followed in sealing or unsealing a record.[4]

Rules 243.1 and 243.2 do not apply "to records that courts must keep confidential by law." (Judicial Council of Cal., Advisory Com. com., reprinted at 23 pt. 1 West's Ann. Codes, Rules, *supra*, foll. rule 243.1, p. 172, quoted in fn. 3, *ante*.) The mere presence of claimed trade secrets does not carry a mandatory confidentiality requirement. Such a requirement is imposed only in actions initiated pursuant to the Uniform Trade Secrets Act for misappropriation of trade secrets. (See Civ. Code, § 3426.5 ["In an action

---

[3]The comment to rule 243.1 by the Judicial Council advisory committee makes this lineage clear:

"This rule and rule 243.2 provide a standard and procedures for courts to use when a request is made to seal a record. The standard is based on *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*[, *supra*,] 20 Cal.4th 1178. These rules apply to civil and criminal cases. They recognize the First Amendment right of access to documents used at trial or as a basis of adjudication. The rules do not apply to records that courts must keep confidential by law. Examples of confidential records to which public access is restricted by law are records of the family conciliation court (Family Code, § 1818(b)) and in forma pauperis applications (Cal. Rules of Court, rule 985(h)). The sealed records rules also do not apply to discovery proceedings, motions, and materials that are not used at trial or submitted to the court as a basis for adjudication. (See *NBC Subsidiary*, 20 Cal.4th at 1208-1209, fn. 25.)

"Rule 243.1(d)-(e) is derived from *NBC Subsidiary*. That decision contains the requirements that the court, before closing a hearing or sealing a transcript, must find an 'overriding interest' that supports the closure or sealing, and must make certain express findings. (*Id.* at 1217-1218.) The decision notes that the First Amendment right of access applies to records filed in both civil and criminal cases as a basis for adjudication. (*Id.* at 1208-1209, fn. 25.) Thus, the *NBC Subsidiary* test applies to the sealing of records.

"*NBC Subsidiary* provides examples of various interests that courts have acknowledged may constitute 'overriding interests.' (See *id.* at 1222, fn. 46.) Courts have found that, under appropriate circumstances, various statutory privileges, trade secrets, and privacy interests, when properly asserted and not waived, may constitute 'overriding interests.' The rules do not attempt to define what may constitute an 'overriding interest,' but leave this to case law." (Jud. Council of Cal., Advisory Com. com., reprinted at 23 pt. 1 West's Ann. Codes, Rules (2002 supp.) foll. rule 243.1, pp. 172-173.)

[4]Because the text of the two rules are too lengthy to quote in this opinion, they are attached as an appendix.

under this title, a court shall preserve the secrecy of an alleged trade secret . . . ."].)[5] The actions commenced against defendants were not of this nature. Accordingly, and notwithstanding defendants' claim that trade secrets are involved, rules 243.1 and 243.2 state the governing principles.

■ One of the novel issues presented by this appeal is the appropriate standard of review for the trial court's order. Defendants submit that we must examine the issues de novo, paying no deference to any legal or factual determination made by the trial court. Hearst submits that the factual determinations made by the trial court must be upheld if they have the support of substantial evidence, and his ultimate decision to unseal must be sustained unless we decide that the trial court abused the discretion granted it by rule 243.1(d). Hearst is correct.

Rule 243.1(d) provides that a trial court "may order that a record be filed under seal only if" it makes the requisite findings. This is the traditional language of discretionary power (e.g., *Gyler v. Mission Ins. Co.* (1973) 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219]; *Kemble v. McPhaill* (1900) 128 Cal. 444, 446 [60 P. 1092]; *Santa Cruz R. P. Co. v. Heaton* (1894) 105 Cal. 162, 165 [38 P. 693]), and courts throughout the country have treated the scope of public access as committed to a trial court's discretion. (E.g., *E.E.O.C. v. National Children's Center, Inc.* (D.C. Cir. 1996) 98 F.3d 1406, 1409, 1410; *Brown & Williamson Tobacco Corp. v. F.T.C.* (6th Cir. 1983) 710 F.2d 1165, 1177; *Wilson v. American Motors Corp.* (11th Cir. 1985) 759 F.2d 1568, 1570; *Marriage of Flynn* (1976) 27 Ariz.App. 653 [557 P.2d 1085, 1087]; *State v. Lesinski* (1992) 82 Ohio App.3d 829 [613 N.E.2d 691, 692]; *General Tire, Inc. v. Kepple* (Tex. 1998) 970 S.W.2d 520, 526.) ■ If a decision involves the exercise of discretion by a trial court, a reviewing court will reverse that decision only if it concludes that the discretion was abused. (E.g., *Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 932 [184 Cal.Rptr. 296, 647 P.2d 1075]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 356, pp. 404-405.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].) ■ Abuse of discretion was the

---

[5]Defendants cite a trio of statutes, but they do not establish the existence of a mandatory independent duty of a trial court to protect trade secrets. Evidence Code section 1060 allows the owner of a trade secret to assert "a privilege to refuse to disclose the secret," but says nothing about judicial action. Evidence Code section 1061, subdivision (b)(4) states that a court "shall issue a protective order limiting the use and dissemination of the trade secret," but the context is clearly stated as being *criminal* proceedings. Code of Civil Procedure section 2031, subdivision (f)(5) also authorizes issuance of a protective order for trade secrets, but only upon motion and the issue is left to the court's discretion (a court "for good cause shown, may make" a protective order).

standard used prior to adoption of rules 243.1 and 243.2 (e.g., *Gilbert v. National Enquirer, Inc.* (1996) 43 Cal.App.4th 1135, 1149 [51 Cal.Rptr.2d 91]; *Whitney v. Whitney* (1958) 164 Cal.App.2d 577, 582 [330 P.2d 947]), and there is nothing in the history of these rules to suggest that a different standard was intended.

It is also clear that if a trial court exercises its discretion and orders a record sealed, that decision is made after, and in light of, the factors enumerated in rule 243.1(d). For example, in the context of this case it is clear that the defendants' basis for "overriding interest" against unsealing is the protection of trade secrets, which may be a valid reason for restricting access. (See *NBC Subsidiary, supra,* 20 Cal.4th 1178, 1222, fn. 46; *Nixon v. Warner Communications, Inc.* (1978) 435 U.S. 589, 598 [98 S.Ct. 1306, 1312, 55 L.Ed.2d 570].) The Legislature has defined trade secrets as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).) The courts of this state have traditionally treated the issue of whether information constitutes a trade secret as a question of fact. (E.g., *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1521 [66 Cal.Rptr.2d 731]; *Moss, Adams & Co. v. Shilling* (1986) 179 Cal.App.3d 124, 128 [224 Cal.Rptr. 456]; *Gate-Way, Inc. v. Wilson* (1949) 94 Cal.App.2d 706, 714 [211 P.2d 311].)[6] There may be a number of related factual determinations, such as whether the trade secret is in fact secret (e.g., *Ashland Management Inc. v. Janien* (1993) 82 N.Y.2d 395 [604 N.Y.S.2d 912, 624 N.E.2d 1007, 1013]; *Daktronics, Inc. v. McAfee* (1999) 1999 S.D. 113 [599 N.W.2d 358, 362]), whether the information "derive[s] 'independent economic value' " (e.g., *Bernier v. Merrill Air Engineers* (2001) 2001 Me. 17 [770 A.2d 97, 106-107]; *Weins v. Sporleder* (1997) 1997 S.D. 111 [569 N.W.2d 16, 17]), whether a party made reasonable efforts to maintain secrecy (e.g., *Paint Brush Corp. v. Neu* (1999) 1999 S.D. 120 [599 N.W.2d 384, 389-390]; *Trandes Corp. v. Guy F. Atkinson Co.* (4th Cir. 1993) 996 F.2d 655, 663-664), and whether disclosure will cause

---

[6]Which is the uniform conclusion of other state courts. (E.g., *Public Systems, Inc. v. Towry* (Ala. 1991) 587 So.2d 969, 972; *Colorado Supply Co., Inc. v. Stewart* (Colo.Ct.App. 1990) 797 P.2d 1303, 1306; *Outside Carpets, Inc. v. Industrial Rug Company* (1971) 228 Ga. 263 [185 S.E.2d 65, 68]; *SDT Industries, Inc. v. Leeper* (La.Ct.App. 2001) 793 So.2d 327, 331; *Home Pride Foods, Inc. v. Johnson* (2001) 262 Neb. 701 [634 N.W.2d 774, 780-781]; *Warner & Co. v. Solberg* (2001) 2001 N.D. 156 [634 N.W.2d 65, 76]; *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999) 85 Ohio St.3d 171 [707 N.E.2d 853, 862]; *Baker Hughes, Inc. v. Keco R. & D., Inc.* (Tex. 1999) 12 S.W.3d 1, 5; *Envirotech Corp. v. Callahan* (Utah Ct.App. 1994) 872 P.2d 487, 494.)

damage (e.g., *In re Iowa Freedom of Information Council* (8th Cir. 1984) 724 F.2d 658, 663). A trial court's express or implied resolution of purely factual issues will be upheld on appeal if supported by substantial evidence. (E.g., *People v. Louis* (1986) 42 Cal.3d 969, 984-985 [232 Cal.Rptr. 110, 728 P.2d 180]; *Roemer v. Pappas* (1988) 203 Cal.App.3d 201, 209 [249 Cal.Rptr. 743].)

These are the standards of review cited by Hearst, but defendants argue that our review of the trial court's order should be de novo. They reason that "interpretation of a statute or rule is a question of law and is evaluated *de novo* by the appeals court" and "where the facts are undisputed, the ultimate conclusion to be drawn from such facts is a question of law." However, rules 243.1 and 243.2 are not vague or ambiguous and need no interpretation. Defendants are mistaken, however, in assuming that the statements contained in the Greiner and Klein declarations settle the facts.

The trial court was entitled to consider the entire record before it (e.g., *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 51 [26 Cal.Rptr.2d 834, 865 P.2d 633]; *Estate of Beard* (1999) 71 Cal.App.4th 753, 778-779 [84 Cal.Rptr.2d 276]). It was not obliged to accept the Greiner and Klein declarations as dispositive. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890 [92 Cal.Rptr. 162, 479 P.2d 362]; *Langley v. Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 655, 663 [262 P.2d 846]; *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241 [71 Cal.Rptr.2d 399].) This is important because it was defendants' burden to prove the existence of trade secrets (see Evid. Code, § 500; *American Paper & Packaging Products, Inc. v. Kirgan* (1986) 183 Cal.App.3d 1318, 1324 [228 Cal.Rptr. 713]; *Cal. Francisco Inv. Corp. v. Vrionis* (1971) 14 Cal.App.3d 318, 321-322 [92 Cal.Rptr. 201]), and to overcome the presumption in favor of public access. (Rule 243.1(c); *NBC Subsidiary, supra,* 20 Cal.4th 1178, 1211, 1217.) If the trial court found the declarations conclusory or otherwise unpersuasive, it could conclude, as it did, that defendants had failed to demonstrate any "overriding interest that overcomes the right of public access . . . ." (Rule 243.1(d)(1).) "Where different inferences may reasonably be drawn from undisputed evidence, the conclusion of the jury or trial judge must be accepted by the appellate court." (9 Witkin, Cal. Procedure, *supra,* Appeal, § 370, p. 421.)[7]

Review of an order to unseal is unlike review of an order to seal records. Were we reviewing an order to *seal*, we would proceed in two

---

[7]We must note a profoundly unsettling consequence to the logic of defendants' uncontradicted evidence argument. According to defendants, the only relevant evidence are the two declarations it submitted against Hearst's motion to unseal. Those declarations were based on a knowledge of the documents that nonparty Hearst, having never seen the heretofore sealed documents, could never have. If defendants' argument were to prevail, it would mean that the scope of relevant evidence would be defined by the party resisting disclosure and the only participant that would be able to discuss the arguments with any particularity. If defendants'

stages. First we would examine the express findings of fact required by rule 243.1(d) to determine if they are supported by substantial evidence. The examination for substantial evidence is made on the basis of the entire record. (E.g., *Hill v. National Collegiate Athletic Assn., supra,* 7 Cal.4th 1, 51; *Estate of Beard, supra,* 71 Cal.App.4th 753, 778-779.) Next, we would decide whether, in light of and on the basis of these findings, the trial court abused its discretion in ordering a record sealed.

Here, however, we review the decision to *unseal* parts of a record already filed under seal. Motions to unseal records are governed by rule 243.2(h), which does not impose a requirement of express findings. Defendants ask us to impose such requirement. They maintain that unless express findings are required for decisions to unseal there will be no basis for a reviewing court "to know what specific facts were found by the trial court in making its decision" and therefore it would be "difficult to defer to the court's factual findings when they are nowhere in the written order." We disagree. There is nothing to suggest that the Judicial Council in framing rules 243.1 and 243.2 to require findings for sealing inadvertently omitted that requirement for unsealing. Indeed, in light of the First Amendment issues involved, that distinction is not at all surprising. Moreover, it is not our function to rewrite the rules to impose a requirement of express findings for ruling on a motion to unseal. (E.g., *Napa Valley Wine Train, Inc. v. Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].) In deciding to unseal records, which is the functional equivalent of denying a motion to seal them, a trial court is clearly, if impliedly, determining that there is no "overriding interest that overcomes the right of public access to the record," and/or that the other requirements of rule 243.1(d)(1) have not been met. As shown above, the nature of the claimed "overriding interest" will also help define the scope of fact-related issues which may be germane to that interest. Moreover, the papers submitted to the trial court may also identify subjects for implied findings. Finally, there may be other sources in a given case, which furnish insight to implied findings. For example, in this case the discovery referee's report included a number of what could be treated as proposed findings, which the trial court may be deemed to have impliedly adopted.[8]

Lacking any express written findings by the trial court, the scope of our review of the order begins by determining whether appropriate findings

---

view of the process at the trial and reviewing court levels were accepted, the practical reality would appear to be that the party resisting disclosure would enjoy an advantage that virtually guarantees success.

[8]In his report to the trial court, the referee proposed these advisory findings: "Defendants have not adequately identified an overriding interest in the whole of their documents (Rule 243.1(d)(1)); the sealing of the whole of each document is not narrowly tailored (Rule 243.1(d)(4)); and whatever overriding interest may be found in one or more of these

we may infer in support of the order that 21 exhibits be unsealed have the support of substantial evidence. The examination for substantial evidence is made on the basis of the entire record, which in this case would include all of the exhibits, including those that the judge refused to unseal.[9]

## Application of the Standards

The 21 documents at issue fall into two general groupings. In light of the importance of secrecy claimed by defendants in the documents—which are still under seal—and the possibility that our Supreme Court might reach a different conclusion, our discussion of those documents must be circumspect. (See *Champion v. Superior Court* (1988) 201 Cal.App.3d 777, 788-789 [247 Cal.Rptr. 624].)

The first group consists of nine documents that the trial court designated in its order as "scripts." The description is accurate, for the documents—ranging in length from two to 15 pages—are a series of questions and answers familiar to all who have had the peace of their evening meal disturbed by a call from a telemarketer. Much of the scripts are obviously intended to be read verbatim over the telephone. For example, if the person called responds that she is "not interested" to a particular service offered by defendants, or "I just want information," there is a specific response to be read. The scripts deal with a number of services and programs offered by defendants.

The second group of documents includes a number of what appear to be internally circulated memoranda dating from June 1996 to March 1999, all written by Andrew Kahr. All save two of the remaining memoranda were

---

documents, Defendants have not demonstrated that disclosure of any such information will result in a substantial probability of prejudice to Defendants (Rule [243.1(d)(3)]). [¶] In view of the foregoing discussion, the . . . Referee finds that [defendants] have failed to provide a factual basis for the express findings required by Rule 243.1(d)." As will be discussed at a later point in this opinion, the referee also made a number of other proposed findings that we will deem the trial court to have impliedly adopted as its own.

[9]The appellants' appendix provided by defendants included a volume of copies of the exhibits ordered unsealed. We allowed this volume to be filed under seal. During our initial examination of this appeal, it occurred to us that determining whether the trial court abused its discretion in ordering these materials unsealed would be assisted by knowing the type of materials the trial court refused to unseal. They formed part of the record before it, which we are obliged to examine. (E.g., *Estate of Beard, supra*, 71 Cal.App.4th 753, 779.) Moreover, by not appealing from the trial court's decision that these materials should remain under seal, Hearst has implicitly conceded there is something qualitatively different about them. Those documents were not in the record on appeal, but counsel for defendants acceded to our request for copies. This cooperation is commended. The materials furnished by defendants, also under seal, shall remain so until finality of this appeal, at which point they will be returned to defendants' counsel. (Cf. rule 243.2(f).)

generated during 1998. Like the scripts, the memoranda range over a number of the services and programs offered by defendants.

Finally, there are two miscellaneous documents. One is titled "Block & Tackle Overview—4/5/99" consisting of two pages with a page of handwritten notes. Next is a document titled "Credit Protection Sales Training." Couched in very general language, it appears to be the outline for acquainting marketers with purely positive features of the credit protection program. Appended to it are copies of three letters from customers lauding the program.[10]

With respect to the statutory definition of a trade secret, Division Two of this court has noted that "a trade secret . . . has an intrinsic value which is based upon, or at least preserved by, being safeguarded from disclosure." (*Pillsbury, Madison & Sutro v. Schectman* (1997) 55 Cal.App.4th 1279, 1287 [64 Cal.Rptr.2d 698].) ■ Public disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret. "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." (*Ruckelshaus v. Monsanto Co.* (1984) 467 U.S. 986, 1002 [104 S.Ct. 2862, 2872, 81 L.Ed.2d 815]; see Legis. Com. com., 12A West's Ann. Civ. Code (1997 ed.) foll. § 3426.1, p. 238 ["the trade secret can be destroyed through public knowledge"]; 1 Milgrim on Trade Secrets (2001) § 1.05[1], p. 1-197 ["unprotected disclosure . . . will terminate . . . and, at least prospectively, forfeit the trade secret status"].) A person or entity claiming a trade secret is also required to make "efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d)(2).) A leading treatise has collected the cases of successful and unsuccessful claims of secrecy protection; among the factors repeatedly noted are restricting access and physical segregation of the information, confidentiality agreements with employees, and marking documents with warnings or reminders of confidentiality. (Trade Secrets Practice in Cal. (Cont.Ed.Bar 2d ed. 1999) §§ 4.9-4.10, pp. 79-86.)

### The Scripts

■ The discovery referee appears to have believed that the telemarketing scripts were not trade secrets because they had been disclosed to the

---

[10]Defendants included a third document, one titled "Providian Guarantee" dated May 27, 1999, in the volume of documents they submit are covered by the trial court's order. Because this document is not mentioned in the order, we can only assume that the trial court did not order it unsealed. There being no harm to defendants from a document that is to remain under seal, there is no need for further mention of this item.

public.[11] We may infer in support of its order that the trial court agreed. Is such an implied finding supported by substantial evidence? We conclude that it is.

Both the Greiner and the Klein declarations have statements directed at satisfying the statutory definition of a trade secret as undisclosed information possessing economic value. (See Civ. Code, § 3426.1, subd. (d)(1).) The statements are, however, conclusionary and lacking in helpful specifics. For example, Ms. Greiner states in her declaration: "Each of the documents at issue is considered proprietary and confidential by Providian. Providian has developed the information contained in the documents at issue over a number of years—at a very significant cost and by taking very significant risks—to allow Providian to compete effectively in the market place for credit cards and related products." Mr. Klein states in his declaration that "in my opinion, the documents . . . would have significant value to Providian competitors. . . . In general these documents represent information which is not known outside the business, which has value to both the business and competitors, which has required a substantial amount of effort and money to develop, and which could not otherwise be acquired or duplicated by competitors." The generality begins to diminish when attention is directed at the scripts. Ms. Greiner states that "Providian has invested significant amounts of money and time in the development and refinement of it[s] scripts, which are not made available to the public. Providian's competitors could use the scripts to unfairly compete with Providian." Klein states when "these scripts . . . are actually put into the market, they are proven commodities that a competitor could benefit [from] by copying as closely as possible." The only germane point made by Klein in the single paragraph of his declaration devoted to the scripts is that "no customer" on whom a given script was used "would hear more than a fragment of the script based on that individual's characteristics and responses." Ms. Greiner made the same point.

But it is also reasonable to infer from the declarations—and we do, in support of the trial court's order (see 9 Witkin, Cal. Procedure, *supra*, Appeal, § 370, p. 421)—that the scripts, if not all at once, then at least in piecemeal fashion, were disclosed to defendants' customers. They have no other purpose. The scripts are sales pitches, and once they have been used, sales pitches are not treated as trade secrets. (E.g., *Eutectic Welding Alloys Corporation v. West* (1968) 281 Minn. 13 [160 N.W.2d 566, 569-570]; *Allen*

---

[11]The referee stated in his report to the trial court: "Although, arguably, there may be trade secrets scattered throughout the . . . documents, it is manifestly clear that not everything in every document is a trade secret. The Scripts, for example, have been disclosed to the public in whole or in part . . . ."

*v. Hub Cap Heaven, Inc.* (1997) 225 Ga.App. 533 [484 S.E.2d 259, 263]; *Health Care Management v. McCombes* (Fla.Dist.Ct.App. 1995) 661 So.2d 1223, 1226.)[12]

### The Kahr Memoranda

Mr. Kahr's apparent role was to review marketing strategies and proposals being developed. The memoranda at issue deal primarily with those subjects, but there are numerous points where blunt criticisms of personnel and management decisionmaking procedures are injected. The referee was understandably skeptical that such memoranda constituted trade secrets,[13] and we may infer that the trial court shared that view.

In addition to possessing actual or potential economic value, the other part of the definition of a trade secret is that the information must have been protected by "efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d)(2).) As previously mentioned, whether a party claiming a trade secret undertook reasonable efforts to maintain secrecy is a question of fact (e.g., *Trandes Corp. v. Guy F. Atkinson Co., supra,* 996 F.2d 655, 663-664), and it may be implicit in a determination that the information does not qualify as a trade secret, also a question of fact (see citations at fn. 6 and accompanying text, *ante*).

In her declaration Ms. Greiner addressed the issue of defendants' efforts to maintain secrecy:

"Providian takes a number of steps to keep confidential documents such as these. We have 'Corporatewide Policies,' which are[ ]executed each year by all employees. Attached hereto as Exhibit 2 is the portion of the 'Corporate-wide Policies' that addresses 'Proprietary and Confidential Information.' As reflected in Exhibit 2, all employees 'have an obligation to secure, hold in strictest confidence, and to protect the Company's proprietary information from disclosure to the public or anyone not authorized to receive it.' Providian includes within the definition of 'proprietary information' the Company's 'strategic plan, new product plans, consumer marketing research

---

[12]The scripts thus have the same status as solicitations in the form of letters or brochures which defendants sent to their credit card holders. Defendants initially had the letters and brochures treated as material covered by the protective order, a position it dropped when plaintiffs sought to have defendants' "improper confidentiality designations" vacated by the trial court.

[13]"Although, arguably, there may be trade secrets scattered throughout the . . . documents, it is manifestly clear that not everything in every document is a trade secret. . . . The Kahr documents provide advice, information, ideas, etc. regarding products, strategies, pricing, etc., which Defendants have not used, pursued or implemented . . . and much of this information is up to four years old and much of it does not amount to trade secrets at all."

and information, business results and financial information, trade secrets . . . data, programs, software, database developments . . . and any other confidential knowledge, data, or proprietary information—in whatever form or medium—produced by and/or for the company.' In addition, employees are required to sign a 'Proprietary Information and Confidentiality agreement,' an example of which is attached as Exhibit 3. Through policies and agreements such as these, Providian attempts to ensure that its proprietary information is kept confidential and not disclosed publicly.

"These policies are implemented in various ways. Access to Providian's business offices is strictly controlled. Providian screens potential employees (including conducting criminal background checks, credit bureau checks, and finger printing) in an effort to identify those who might present a risk to the security of the business. The offices here in San Francisco, where most of these types of documents are stored, are only accessible with magnetic key cards assigned to employees or through a receptionist. For many of these documents, we also have informal practices to limit the number of copies that are produced. For example, 'briefs',[14] although circulated to various persons for approval, are distributed to a limited group on a 'need to know basis' only. Additionally, we have encouraged employees to limit the copying of briefs only to the extent necessary for use with ongoing work or project."

"Mr. Kahr served as a consultant for Providian for a number of years. His services were provided pursuant to contracts under which the confidentiality of Providian's proprietary information was protected. Pursuant to those contracts, Mr. Kahr was given access to extensive Providian confidential information . . . ."

Perhaps so, but in its capacity as the trier of fact, the trial court was not obliged to base his decision on those statements just because there were no counter declarations. (E.g., *Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d 875, 890; *Rodney F. v. Karen M., supra,* 61 Cal.App.4th 233, 241.) As previously noted, given the fact that only defendants knew the contents of the documents, Hearst could not be expected to produce any such counter declarations. (See fn. 7, *ante; Frye v. Felder* (1966) 246 Cal.App.2d 136 [54 Cal.Rptr. 627] [expressing reservation at accepting "facts alleged in plaintiff's uncontradicted declaration, which facts the defendant is in no position to deny"].)

---

[14]At another point in her declaration Greiner states that "[d]etailed proposals of new products, product features and sales approaches, together with plans for the necessary sales, operational, servicing and back-room activities [are] often produced in the form of a 'marketing brief' for management approval."

Moreover, the entire record discloses that defendants had an additional security measure, one that was not used for any of the documents defendants now wish to keep undisclosed. For example, one of the documents the trial court ordered should remain under seal is a 1998 report on the amount of suspected "poaching" of defendants' clients by other credit card providers. Each page of the report is stamped "CONFIDENTIAL," and the front page of the report is stamped "DO NOT COPY OR DISTRIBUTE." The law recognizes the truth of the adage that actions speak louder than words. (See, e.g., *In re Menna* (1995) 11 Cal.4th 975, 990 [47 Cal.Rptr.2d 2, 905 P.2d 944] [claim that debts would be repaid belied by fact that debts had been discharged in bankruptcy]; *Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 752-754 [8 Cal.Rptr. 427, 356 P.2d 171] [contract construed in light of contracting parties' acts under the contract]; Legis. Com. com., 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1200, p. 4 ["nonassertive conduct is not regarded as hearsay" because "there is frequently a guarantee of the trustworthiness of the inference to be drawn from such nonassertive conduct because the actor has based his actions on the correctness of his belief . . . ."].) The failure of defendants to give the Kahr memoranda—or any of the documents at issue on appeal—this heightened treatment reasonably could be deemed by the trial court as circumstantial evidence that defendants had not previously treated them as trade secrets.

### Did the Trial Court Abuse Its Discretion?

The preceding discussion establishes that there is substantial evidence to support findings that the 21 documents the trial court ordered unsealed did not qualify as trade secrets either because of the subject matter, because they had already been disclosed, or because defendants had not taken reasonable efforts to protect them. In that defendants have failed to demonstrate that the court was misapplying the applicable legal standard, these findings are tantamount to a showing that the trial court did not abuse the discretion vested in it by rules 243.1 and 243.2. (See, e.g., *Hill v. National Collegiate Athletic Assn., supra,* 7 Cal.4th 1, 47; *Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334, 1340 [285 Cal.Rptr. 325].) Two additional considerations reinforce that conclusion.

First the leading treatise excludes as trade secrets what is called general business "know-how," which it defines as "the informational and experiential expertise related to practical application of specifics, such as . . . processes." (1 Milgrim on Trade Secrets, *supra,* § 1.09[3], p. 1-386.) Much, if not most, of the documents ordered unsealed would appear to come within this definition. The treatise goes on to state: "If protection is sought for a very broad accumulation of knowledge and experience, a court might reject

such claim as an attempt to simply cover knowledge and skill. Accordingly, when asserting methods and techniques and know-how to be trade secrets, a reasonable degree of precision and specificity is appropriate." (*Ibid.*, fns. omitted.) The material defendants sought to protect from disclosure does encompass "a very broad accumulation of knowledge and experience." Moreover, according to the Greiner and Klein declarations, defendants claimed trade secret status for "virtually every section" of every document. They did not propose that measures such as editing or redacting the documents (cf. rule 243.1(d)(4), (5) & (e)(1)(ii)) that might have reached a reasonable accommodation between their interests and the strong presumption in favor of public access. In fact they actually opposed redacting when the subject was raised by the referee. Defendants argued, "[I]f, instead of requesting that each entire document be sealed, Providian had parsed each document line by line, it is certainly possible that some fragments could have been left without disclosing the proprietary content. But the remainder would have been so fragmented and, therefore, misleading and out of context, that it would not have informed the public about what was going on in this case." Defendants were, in effect, framing and submitting the issue on an all-or-nothing basis. Even if it is possible that a fragment here or a paragraph there might qualify as a trade secret (see fn. 12, *ante*), defendants spurned such a line-by-line approach. They cannot now fault the trial court for following their lead. ▉ "A trial court may not be held to have abused its discretion as to a particular issue which it was never asked to consider." (*Martin v. U-Haul Co. of Fresno* (1988) 204 Cal.App.3d 396, 407 [251 Cal.Rptr. 17].)

▉ Defendants renew their argument that redaction was not an option because what would be left would be "misleading." Although the documents are peppered with abbreviations and industry jargon that may not be familiar to laypeople, defendants do not explain in what fashion redacted documents would deceive readers. In light of defendants' history of defining confidential material as broadly as possible, it would not be improper for the trial court to view their latest effort with considerable skepticism and conclude that the scope of their proposed record sealing was neither "narrowly tailored" nor the least restrictive means to protect any interest against disclosure. (Rule 243.1(d)(4) & (5).)

Second, this was not a simple dispute with a limited cast, but a number of class actions that—according to the plaintiffs' counsel—could involve a nationwide class of millions. Defendants' methods of soliciting its credit card customers were at the heart of that dispute. There is thus an undeniable force to Hearst's argument that there is "great and legitimate public interest in precisely how Providian went about trying to sell its various products and

services to the public." When that interest is augmented by the strong presumption in favor of public access reflecting "a first principle that the people have the right to know what is done in their courts" (*In re Shortridge* (1893) 99 Cal. 526, 530 [34 P. 227]), a decision by the trial court that defendants had not made out the case for "an overriding interest that overcomes the right of public access" (rule 243.1(d)(1)) was no abuse of discretion.

The order is affirmed. The parties shall bear their respective costs of appeal.

Reardon, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied March 21, 2002, and appellants' petition for review by the Supreme Court was denied June 19, 2002. Kennard, J., did not participate therein.