Filed 10/20/23  McCracken v. Riot Games CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MELANIE McCRACKEN et al., | B313724, B323115 |
| Plaintiffs, | (Los Angeles County Super. Ct. No. 18STCV03957) |
| v. | |
| RIOT GAMES, INC. et al., | |
| Defendants and Appellants; | |
| CALIFORNIA CIVIL RIGHTS DEPARTMENT et al., | |
| Interveners and Respondents. | |

APPEALS from orders of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Olivier & Schreiber, Monique Olivier, and Christian Schreiber for Intervener and Respondent California Civil Rights Department.

Gibson Dunn & Crutcher, Katherine V.A. Smith, Bradley J. Hamburger, Daniel R. Adler, and Patrick J. Fuster for Defendants and Appellants Riot Games, Inc., Riot Games Direct, Inc., Riot Games Merchandise, Inc., and Riot Games Productions, Inc.

_____

In these consolidated appeals, Riot Games, Inc., Riot Games Direct, Inc., Riot Games Merchandise, Inc., and Riot Games Productions, Inc. (Riot) contends the trial court abused its discretion in denying Riot's motions to seal the amounts paid by Riot in 14 settlement and separation agreements reached with current and former female Riot employees to resolve their sex discrimination, sexual harassment, and equal pay claims.[1]  The trial court did not abuse its discretion.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A.    *Class Action Litigation Against Riot for Discrimination*
      *Against Women*
      In 2018 then-current Riot employee Melanie McCracken and former Riot employee Jessica Negron filed a putative class action against Riot alleging claims for sex discrimination in pay and promotions, sexual harassment, and creation of a hostile work environment for women.  The first amended complaint alleged 12 causes of action:  (1) violation of the California Equal Pay Act (EPA; Lab. Code, § 1197.5 et seq.); (2) discrimination and

_____

[1]    Unless otherwise indicated, references to settlement agreements include separation agreements.

2

retaliation in violation of the EPA; (3) sex and gender discrimination in violation of the Fair Employment and Housing Act (FEHA; Lab. Code, § 12940 et seq.); (4) harassment in violation of FEHA; (5) retaliation in violation of FEHA; (6) failure to prevent discrimination in violation of FEHA; (7) constructive termination (on behalf of only Negron); (8) violation of Business and Professions Code section 17200 et seq.; (9) penalties under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.); (10) failure to pay overtime wages; (11) failure to provide accurate wage statements; and (12) failure to timely pay wages.

Prior to the filing of the lawsuit, the Civil Rights Department (CRD) (formerly the Department of Fair Employment and Housing) had opened an investigation into Riot's potential violations of California's equal pay requirements and widespread sexual harassment and discrimination in the workplace. CRD conducted extensive investigative discovery into Riot's practices.

In 2019 the parties to the putative class action negotiated a proposed classwide settlement for $10 million.[2] On November 27, 2019 the plaintiffs filed a motion for preliminary approval of the settlement. The proposed settlement class consisted of approximately 1,000 women and included "all current and former female Riot employees and temporary agency contractors who have not signed general releases and who worked at Riot in California from November 6, 2014 through the date of

---

[2] In an amended complaint filed with plaintiffs' motion for preliminary approval, McCracken was replaced as a proposed class representative by Gabriela Downie.

3

Preliminary Approval." The settlement allocated $500,000 to penalties under PAGA.

The California Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) filed a motion to intervene on December 27, 2019. In early 2020 CRD also moved to intervene. Both DLSE and CRD objected to approval of the settlement.[3] The agencies asserted the settlements contained broad releases of the employees' claims with no changes to company policy, the payments to the employees undervalued the claims, and the court lacked jurisdiction over the PAGA claims. CRD also complained of potential collusion between the negotiating parties as shown by hidden side settlement agreements Riot had reached with the proposed class representatives (McCracken, Negron, and Downie), which the attorneys failed to disclose to the class or the court. The plaintiffs subsequently withdrew their motion for preliminary approval.

The trial court granted the motions to intervene filed by DLSE and CRD. DLSE filed a complaint in intervention alleging PAGA claims. CRD's complaint in intervention alleged hiring, pay, assignment, promotion, and related discrimination; sexual harassment; retaliation; failure to prevent discrimination and

---

[3] DLSE is charged with enforcing Labor Code requirements and government orders governing wage, hour, and working conditions of California employees. (Lab. Code, § 61; *Craib v. Bulmash* (1989) 49 Cal.3d 475, 478.) The CRD is responsible for protecting individuals from unlawful discrimination. (*Department of Fair Employment and Housing v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 410; see Gov. Code, § 12930.)

4

harassment; and recordkeeping violations.  Plaintiffs served the operative third amended class action complaint on August 18, 2020.

On October 30, 2020 CRD filed a motion to compel Riot to provide further discovery responses, seeking the production of the settlement and separation agreements Riot reached with McCracken and approximately 100 other female employees.  CRD argued Riot should be required to disclose the details of the agreements because Riot maintained the employees who reached the agreements should be excluded from CRD's enforcement action based on waivers in the agreements.  CRD further asserted the settlement agreements should be disclosed to enable CRD to determine:  (1) whether the agreements had enforceable releases or waivers; (2) which of the settling employees was covered by CRD's request for relief in its enforcement action; (3) whether the relief provided by the side agreements was adequate and would support an offset against additional relief sought by CRD; and (4) whether the agreements included terms that "would chill employee or witness cooperation in this government enforcement action."

On January 25, 2021 the trial court granted CRD's motion and directed the parties to meet and confer regarding a protective order.  In March 2021 the parties reached an interim agreement under which the settlement agreements at issue were produced to CRD subject to an "'attorneys' eyes only'" designation on April 1, 2021.  (Capitalization omitted.)  The parties agreed that a protective order would later be entered that would treat the agreements as "'highly confidential.'"  (Capitalization omitted.)

B. *The Trial Court Declines To Seal Settlement Amounts Contained in Settlement Agreements*

On April 7, 2021 CRD filed an ex parte application for a protective order and corrective notice regarding Riot's settlement practices. CRD requested a protective order requiring Riot to obtain prior approval from the court or CRD before entering into any settlement agreements relating to the lawsuit or an agreement containing confidentiality or secrecy clauses. CRD also requested the court issue a corrective notice to all current and former employees informing them (1) they had a right to participate and obtain potential relief from the pending government enforcement action; (2) it is unlawful to retaliate against employees for participating in a government enforcement action or speaking with a government agency; and (3) notwithstanding a non-disparagement or confidentiality term in any agreement, employees may freely participate in the government enforcement action and speak with enforcement agencies.

CRD argued Riot had interfered with CRD's investigation "through settlements designed to 'unlawfully influence' employee-witnesses with misleading illegal or unethical terms, intimidation, and/or consideration." In support of its application, CRD lodged conditionally under seal seven settlement agreements produced by Riot (including for McCracken, Negron, and Downie) and six separation agreements, all executed from May 2017 through December 2020. On April 12, 2021 the trial court denied the ex parte application without prejudice to CRD filing a noticed motion.

6

On April 19, 2021 Riot filed a motion pursuant to California Rules of Court, rules 2.550 and 2.551 (sealed records rules)[4] seeking to seal the "confidential personnel information of private employees as well as [Riot's] financial and business information" contained in the settlement and separation agreements lodged conditionally under seal with CRD's April 7, 2021 ex parte application (as well as references to the information in CRD's supporting memorandum and attorney declaration). Riot advanced four arguments in support of its motion: (1) protection of the confidential and private employee information was an overriding interest that outweighed the public right of access; (2) there was a substantial probability that Riot's and third parties' interests would be harmed without sealing; (3) the narrowly tailored redactions Riot proposed were the least restrictive means available to protect these interests; and (4) the confidentiality provisions in the settlement agreements provided a separate basis to seal the documents.

On May 10, 2021 CRD filed a noticed motion for a protective order and corrective notice seeking the same relief requested in its ex parte application. CRD again lodged conditionally under seal the 13 separation and settlement agreements as exhibits, plus an additional settlement agreement Riot produced on April 29, 2020. CRD requested issuance of a corrective notice and protective order requiring approval by the court, CRD, DLSE, or a settlement judge of any further individual settlements between Riot and putative class members. On May 20, 2021 Riot filed a second motion to seal, raising with

---

[4]     Further references to rules are to the California Rules of Court.

respect to CRD's noticed motion the same arguments it asserted in its first motion to seal.

At a hearing on June 4, 2021, the trial court granted Riot's first motion to seal in part, sealing the employee names and private identification information but not the remainder of the settlement and severance agreements. The court explained that other than the employees' personal identifying information, Riot failed to "show an overriding interest that overcomes the right of public access" to the information. On June 29, 2021 the court entered a written order specifying the sealed information covered by its oral ruling, explaining that while the personal private identification information should remain under seal, "as to the remaining information Riot seeks to seal, Riot did not meet the burden of proof required under California Rule of Court 2.551 to show an overriding interest that overcomes the right of public access to all the other information."[5]

At the June 4 hearing, the trial court granted in part CRD's motion for a protective order and corrective notice. The court rejected CRD's request to declare void settlement terms that limit the ability of employees to assist the governmental agencies, and likewise denied CRD's request for a protective order preventing Riot from reaching settlements with employees without court or

---

[5] On June 14, 2021 the trial court granted in part Riot's ex parte application requesting clarification of the scope of the trial court's June 4, 2021 oral ruling, specifying the type of information to be sealed as personal identification information, including the employee names, contact information, social security numbers, job titles, attorneys, and lawsuit identifying information. Riot appealed the court's June 14 ruling, but it does not on appeal challenge the court's definition of personal identifying information.

8

agency approval. However, the court ordered issuance of a corrective notice to those class members who had been asked to enter into settlement or separation agreements with Riot.

On June 7, 2021 Riot filed a third motion to seal, seeking to redact portions of CRD's reply filed in support of its motion for a protective order and corrective notice. Riot raised the same arguments it made in its earlier motions. In light of its ruling on the first motion to seal, the court deferred ruling on the second and third motions, and subsequently took the motions off calendar.[6]

On September 9, 2021, in response to the private parties' request for a mandatory settlement conference, CRD filed an ex parte application seeking clarification of Riot's and the proposed class representatives' standing to settle class and PAGA claims without the participation of the governmental agencies. In support of its motion, CRD conditionally lodged under seal three of the settlement agreements it had previously lodged with prior motions. On September 13 the court denied the ex parte application. However, on September 17 Riot filed a fourth motion to seal, raising essentially the same arguments it had asserted in its first three motions.

On November 18, 2021 the parties (including DLSE and CRD) reached a global settlement in principle and subsequently executed a consent decree and settlement agreement. On

---

[6]     At a July 8, 2021 status conference, the trial court took the second and third motions off calendar because Riot had appealed the court's ruling on the first motion, and the later motions sought to seal the same information. However, the court addressed the motions in its August 24, 2022 order denying Riot's motion to permanently seal the documents.

9

December 27 the parties filed a joint motion for preliminary approval of the settlement. The settlement terms included a maximum gross settlement amount of $100 million, with an $80 million settlement fund for payments to class members and $4 million (of the $80 million) to be paid to DLSE (75%) and class members (25%) to resolve the PAGA claims. The court granted preliminary approval of the settlement on August 10, 2022.

On February 10, 2022 Riot filed a fifth "motion to permanently seal confidential information in individual settlement agreements." (Boldface and capitalization omitted.) In this catch-all motion, Riot consolidated the (largely identical) information to be sealed at issue in its four prior motions, raising the additional argument that circumstances had changed in light of the parties' settlement. Riot argued that granting the sealing motion would end the litigation, and the "balance of public and private interests" had substantially shifted due to the settlement. Riot did not present any additional factual support to establish an overriding interest in confidentiality or a probability of harm from disclosure.

At a hearing on August 16, 2022 the trial court denied the fifth motion, finding under rules 2.550 and 2.551 that Riot failed to establish an interest that overcame "the public's right to access these records which were relevant to the court's rulings, and no prejudice has been demonstrated." The court applied the same analysis to the settlement agreements attached to CRD's September 9, 2021 ex parte application (and Riot's fourth motion to seal), concluding the public's right of access to the information was implicated and "Riot failed to establish a cognizable overriding interest, still relying almost exclusively on the supposed confidential nature of the agreements."

On August 24, 2022 the trial court issued a written order denying Riot's fourth motion to seal and fifth motion to permanently seal, except for the sealing of personal identifying information.

Riot timely appealed the trial court's June 14 and June 29 orders on the first motion to seal and the court's August 24, 2022 order granting in part the fourth motion to seal and fifth motion to permanently seal. We consolidated Riot's appeals.

## DISCUSSION

A.     *Public Access to Court Records and Standard of Review*

"Courts in California have long recognized a common law right of access to public documents, including court records." (*In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1078 (*Tamir*); accord, *Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 483 (*Overstock*).) Under the common law, "court records are presumed to be '"open to the public unless they are specifically exempted from disclosure by statute or are protected by the court itself due to the necessity of confidentiality."'" (*Tamir*, at p. 1078; accord, *Overstock*, at p. 483; see *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1213-1214 (*NBC Subsidiary*) ["[W]e agree with numerous other courts . . . that history does suggest such a general right of access to civil trials and related proceedings."].)

In *NBC Subsidiary*, the Supreme Court recognized a First Amendment right of access to civil court proceedings, observing this right generally includes "access to civil litigation documents filed in court as a basis for adjudication." (*NBC Subsidiary*, *supra*, 20 Cal.4th at pp. 1208, & fn. 25, 1209; accord, *Tamir*,

11

*supra*, 72 Cal.App.5th at p. 1078; *Overstock, supra*, 231 Cal.App.4th at p. 485 ["Since *NBC Subsidiary*, the California Courts of Appeal have regularly employed a constitutional analysis in resolving disputes over public access to court documents."].) As the court in *NBC Subsidiary* explained, "We believe that the public has an interest, in *all* civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in ordinary civil cases." (*NBC Subsidiary*, at p. 1210.)

In 2001, in response to *NBC Subsidiary*, the Judicial Council adopted the sealed records rules currently found in rules 2.550 and 2.551. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 68 (*Mercury*); see *Overstock, supra*, 231 Cal.App.4th at p. 486.) The sealed records rules create a presumption of public access to court-filed documents. (Rule 2.550(c).) Although the rules do not apply to "discovery motions and records filed or lodged in connection with discovery motions or proceedings" (rule 2.550(a)(3)), they apply to "discovery materials used at trial or submitted as a basis of adjudication of matters other than discovery motions or proceedings." (*Ibid*.) A court may order a record filed under seal "only if it expressly finds facts that establish: [¶] (1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No

12

less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).)[7]

"While the court must consider the same criteria pertinent to a motion to seal when ruling on a request to unseal (rule 2.551(h)(4)), an order to unseal—as well as an order denying sealing—does not require express factual findings by the trial court." (*Overstock, supra*, 231 Cal.App.4th at p. 488; accord, *Tamir, supra*, 72 Cal.App.5th at p. 1079.)

We review an order denying a motion to seal under the sealed records rules under the same standard as an order granting a motion to unseal. (*Tamir, supra*, 72 Cal.App.5th at pp. 1079-1080; *Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 301-302 (*Providian*).) When reviewing an order denying a motion to seal, the reviewing court evaluates de novo whether the sealed records rules apply and determines "whether substantial evidence supports the trial court's express or implied findings that the requirements for sealing are not met." (*Overstock, supra*, 231 Cal.App.4th at p. 492; see *Tamir*, at p. 1081 ["[A]ppellants are challenging an order unsealing court records. . . . [W]e review the record for substantial evidence supporting the . . . order."]; *Providian,* at pp. 302-303 [in reviewing unsealing of documents, reviewing court determines whether substantial evidence supports trial court's express or implied findings].) We review the court's "ultimate decision to unseal" for an abuse of discretion. (*Providian*, at p. 299; see

---

7       Rule 2.551(b) governs the procedures for filing records under seal; rule 2.551(h) specifies procedures for unsealing. "In determining whether to unseal a record, the court must consider the matters addressed in rule 2.550(c)-(e)." (Rule 2.551(h)(4).)

13

*Overstock*, at p. 492 [referencing trial court's "ultimately discretionary decision to deny sealing"].)

B.      *Riot Forfeited Its Argument the Sealed Records Rules Do Not Apply*

On appeal, Riot contends the sealed records rules do not apply to the payment amounts in the settlement agreements because the amounts were not submitted as a basis for adjudication of any issues raised by CRD in its ex parte application and motions. However, Riot did not argue in any of its first four motions to seal that the sealed records rules did not apply, instead asserting in its first motion (repeated in the following three in similar language) that the "[m]otion is made pursuant to Rules 2.550 and 2.551 of the California Rules of Court." And in its summary of argument, Riot asserted "California Rules of Court 2.550 and 2.551 govern the sealing of records filed with the Court." Riot argued in its first heading that "Protection of Riot's confidential information and private employee personnel information overcome the right of public access," followed by its argument that "A substantial probability exists that Riot's and third party interests will be prejudiced if [CRD's] ex parte application and supporting documents are not sealed," and then "Riot's proposed redactions are narrowly tailored to protect its overriding business interests, and no less restrictive means exist to achieve this purpose." (Capitalization and boldface omitted.) Riot's final argument was that the confidentiality provisions in the settlement agreements supported sealing the documents.

14

Nowhere in its briefs in support of the sealing motions did Riot contend rules 2.550 and 2.551 did not apply.[8] Accordingly, Riot has forfeited this argument. (*Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 ["'Failure to raise specific challenges in the trial court forfeits the claim on appeal.'"]; *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 ["'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.'"]; *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 ["'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.'"].)

Riot contends it did not forfeit the argument that the sealed records rules did not apply because it stated in its notice of motion for each of the first four motions that the terms it sought to seal were "'irrelevant to the adjudication of any merits issues before the Court.'" However, Riot's passing reference to relevance in its notice of motion, absent any discussion of whether the sealed records rules applied, did not preserve the issue for appeal. (See *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913-914 [individual plaintiffs forfeited challenge to standards for setting water rates where the individuals discussed the standards at trial but failed to challenge their validity, explaining that "[b]y waiting to raise

_____

8       As discussed, Riot's fifth, catch-all motion relied on the arguments in its prior motions to seal, adding only that the public interest in the individual settlements had diminished due to the global settlement of the class action and resolution of the government investigation.

15

such an issue until appeal, they have deprived both the District of the opportunity to address the [i]ndividuals' concerns and the trial court of the opportunity to resolve the issue"]; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [general arguments in trial court that fees awarded were excessive, duplicative, or unrelated to the motion were not sufficient to preserve issue for appeal].)[9]

Riot alternatively urges us to exercise our discretion to address the applicability of the sealed records rules because the issue involves a question of law subject to de novo review and implicates important issues of public policy. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["application of the forfeiture rule is not automatic," although "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"]; *Adams v. Murakami* (1991) 54 Cal.3d 105, 115, fn. 5 ["a reviewing court has discretion to decide" a forfeited issue "if it presents a pure question of law arising on undisputed facts, particularly when the issue is a matter of important public policy"].) Contrary to Riot's contention, although the decision whether the sealed records rules apply is a question of law subject to de novo review (*Overstock, supra*,

---

[9] Riot also contends the argument in its motions to seal that CRD's filings had "'little to no public interest'" preserved its argument the sealing rules did not apply. But this assertion was in the context of Riot's argument it and its employees had a need to protect their confidential information, which "[overcame] the right of public access"—the factors listed in rule 2.550(d)(1) and (2). (Boldface and capitalization omitted.)

16

231 Cal.App.4th at p. 492), the determination rests on factual findings by the trial court as to whether the information was submitted as a basis for adjudication. (Rule 2.550(a)(3).) Riot failed to request the trial court make this determination in the first place. Riot asserts the court reached this question because it concluded the documents were relevant to CRD's motion. But the court's consideration of relevance was in the context of its finding under rule 2.550(d)(1) that the public interest in access to the information was high. And as to Riot's argument California has a "strong interest in confidential settlement agreements," the court addressed these policy concerns in applying rule 2.550. We therefore decline to exercise our discretion to decide the issue.[10]

C.    *The Trial Court Did Not Abuse Its Discretion in Denying Riot's Motions To Seal*
      1.    *Substantial evidence supports the trial court's finding there was not an overriding interest in keeping the settlement amounts confidential that overcame the right of public access*

Riot contends the ""binding contractual agreement[s]'" it reached with its employees not to disclose the settlement amounts, and California's interest in maintaining the

---

[10]    Even if we were to reach Riot's contention, the settlement amounts were relevant to CRD's ex parte application and motions for a protective order and corrective notice because the amounts (whether high or low) were central to the question whether Riot had improperly reached side agreements with its current and former employees in an effort to thwart their cooperation with CRD in its investigation.

17

confidentiality of settlement agreements to promote settlement, served as overriding interests in keeping the settlement amounts confidential. The trial court rejected these arguments, concluding in denying Riot's fifth motion to seal that "Riot failed to establish a cognizable overriding interest, still relying almost exclusively on the supposed confidential nature of the agreements," and any overriding interest did not overcome the public's right to access the information. As to the employees' interests, the court found Riot presented no evidence that any employees objected to public disclosure of the settlement amounts. Even assuming Riot had an interest in maintaining confidentiality of the settlement payments and other financial information, the trial court did not abuse its discretion in finding this was not an "overriding interest" that overcame the right of public access.

Riot relies on the Supreme Court's acknowledgment in a footnote in *NBC Subsidiary* that "enforcement of binding contractual obligations not to disclose" information is an example of an overriding interest identified by the federal courts. (*NBC Subsidiary, supra*, 20 Cal.4th at p. 1222, fn. 46; see *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1283 [defendant's "contractual obligation not to disclose can constitute an overriding interest within the meaning of" the predecessor to rule 2.550(d), but defendant failed to show prejudice to support sealing request].)

Riot also relies on California's policy favoring settlement, citing *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781. The Supreme Court in *Monster Energy* in the context of an alleged breach of a confidentiality agreement in a settlement agreement observed, "'The privacy of a settlement is generally understood

18

and accepted in our legal system, which favors settlement and therefore supports attendant needs for confidentiality.' [Citation.]  Routine public disclosure of private settlement terms would 'chill the parties' ability in many cases to settle the action before trial.  Such a result runs contrary to the strong public policy of this state favoring settlement of actions.'" (*Id*. at pp. 793, 795.)

In addition, as Riot points out, although parties are prohibited from reaching settlement agreements that keep confidential factual information pertaining to claims for sexual assault, sexual harassment, or workplace harassment, discrimination, or retaliation, the Legislature carved out an exception that allows parties to maintain the confidentiality of the amounts paid in the settlement agreements.  (See Code Civ. Proc., § 1001, subds. (a) [prohibiting any settlement agreement provision that "prevents or restricts the disclosure of factual information related to a claim" for sexual assault or harassment, or harassment, discrimination or retaliation in the workplace or by the owner of a housing accommodation], (e) ["This section does not prohibit the entry or enforcement of a provision in any agreement that precludes the disclosure of the amount paid in settlement of a claim."].)

Riot argues the Legislature's express protection of the confidentiality of settlement amounts "puts a thumb on the scale in favor of sealing."  However, the general policy to foster settlements by keeping settlement terms confidential does not mean protection from disclosure of the settlement amounts in a particular case serves an overriding interest that overcomes the public interest.  "[T]he question in the context of sealing is whether the state-recognized privacy interest in financial

19

information overrides the federal constitutional right of access to court records.  This is necessarily a balancing inquiry, dependent on the facts and circumstances of the particular case." (*Overstock, supra*, 231 Cal.App.4th at p. 504; accord, *Tamir, supra*, 72 Cal.App.5th at p. 1088.)

Substantial evidence supports the trial court's finding that even if Riot showed an overriding interest in keeping the settlement amounts confidential, the public's interest in access outweighed this interest.  The relevance of the information was "high" in light of CRD's motion for a corrective notice that would advise employees they could freely cooperate with the governmental agencies regardless of the confidentiality provisions in any settlements they reached.  The public would have an interest in understanding the extent to which Riot was offering employees settlement payments to thwart the governmental agencies' investigations.  As the trial court explained, CRD raised concerns with "potential witness tampering through offers of consideration" in the settlement agreements, which it sought to address through its request for corrective notice.

Riot argues the right to public access is not significant here because there was a global settlement of the class action that revealed the nature of the factual allegations and payment of $100 million in the settlement.  Riot asserts, "With the filing of a 46-page consent decree that catalogs all the relevant facts and provides significant monetary and injunctive relief to a class of employees and contractors, the public will have learned more than enough about Riot's employment practices. . . . There is no public interest in learning about the specific amounts of older individual settlements with former employees and contractors

20

that were part of confidential agreements." Riot ignores the significance of the governmental agencies' claim that Riot was impeding cooperation by its current and former employees with the enforcement agencies by reaching side settlements with confidentiality provisions. And it was only after the agencies intervened that Riot withdrew its $10 million settlement offer, and then later agreed to a class settlement of $100 million.[11] The public had an interest in understanding the amount of the individual payments Riot made to the employees to settle their claims, for example, whether Riot was paying its employees $10,000 or $100,000 to settle their harassment or discrimination claims. A payment out of proportion to appropriate compensation could support CRD's allegations of witness tampering.

Moreover, as discussed, the public has a general right of access in civil cases. (See *NBC Subsidiary, supra*, 20 Cal.4th at

---

[11] Riot's reliance on *Doe 1 v. Superior Court* (2005) 132 Cal.App.4th 1160, 1171 and *Jalali v. Root* (2003) 109 Cal.App.4th 1768, 1784 is misplaced. *Doe 1* involved the application of the mediation confidentiality privilege to personnel records of the Los Angeles Archdiocese, not a decision whether to seal records. (See *Doe 1* at 1163-1164.) In *Jalali*, the court reversed a judgment for Jalali in her legal malpractice proceeding against her former lawyer who she claimed gave her bad tax advice with respect to a $2.75 million settlement offer she accepted. (*Jalali*, at pp. 1773, 1783.) As a final "housekeeping matter," without any legal analysis, the court took "the prophylactic step" of ordering the record of the confidential settlement agreement sealed pending further order of a court or showing of good cause. (*Id*. at pp. 1783-1784.) *Jalali* does not provide any guidance on resolution of the balancing test under rule 2.550.

p. 1210; *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1055 (*Burkle*); see rule 2.550(c) ["court records are presumed to be open"].)  Under the sealed records rules, it was Riot's burden to establish facts showing it had an overriding interest in confidentiality that overcame the public right of access.  (Rule 2.550(d)(1); *Providian, supra*, 96 Cal.App.4th at p. 301 ["it was defendants' burden to prove the existence of trade secrets [citations], and to overcome the presumption in favor of public access"].)

Thus, while Riot may have established a legitimate interest in confidentiality, substantial evidence supports the trial court's finding this interest was outweighed by the public's right of access to the settlement amounts.  (See *McNair v. National Collegiate Athletic Assn.* (2015) 234 Cal.App.4th 25, 36 ["On balance, therefore, the NCAA's interest in ensuring the confidentiality of its investigations is insufficient to overcome presumption of, and the courts' obligation to protect the constitutional interest in, the openness of court records in ordinary court proceedings."]; *Providian, supra*, 96 Cal.App.4th at p. 301 ["If the trial court found the declarations conclusory or otherwise unpersuasive, it could conclude, as it did, that defendants had failed to demonstrate any 'overriding interest that overcomes the right of public access.'"].)

2. *Riot did not establish a substantial probability of prejudice to any overriding interest*

Riot argues, as it did in the trial court, that it and its employees would suffer three types of harm from disclosure of the settlement amounts: invasion of Riot's privacy interests, invasion of the privacy interests of Riot's employees; and competitive

22

harm. Substantial evidence supports the trial court's finding Riot failed to establish a substantial probability of prejudice, as required by rule 2.550(d)(3).

Riot argues as to its privacy interests that prejudice is "certain" because it bargained for confidential settlement terms, and "[o]nce the cat is out of the bag," there is no way to restore the bargain to Riot. But Riot failed to explain how, other than the harm in having to pay for something it was not getting, disclosure would cause it harm. Riot also cites to public policy concerns, observing that refusing to seal the settlement amounts would generally chill settlement efforts. This argument fails to show how disclosure would prejudice Riot.[12] As the Seventh Circuit reasoned in *Goesel v. Boley Intern. (H.K.) Ltd.* (7th Cir. 2013) 738 F.3d 831, 835, in denying a motion to seal the terms of two settlement agreements, "because there is potential public value to disclosing settlement terms, including amount, parties *have* to give the judge a reason for not disclosing them—and the fact that they don't want to disclose is not a reason." (See *Tamir, supra*, 72 Cal.App.5th at p. 1088 ["[T]he general right to financial privacy, without more, does not preempt the public's right of

---

[12] Riot's reliance on *Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 625 is misplaced. There, the plaintiff included in the appellate record the tax returns and financial information of the company that accused Cassidy of practicing as a certified public accountant without a license, even though the documents were not admitted into evidence or considered by the administrative judge or superior court. (*Id.* at pp. 624-625.) On these narrow circumstances, sealing was appropriate under rule 2.550(d). (*Id.* at p. 625; see *Strawn v. Morris, Polich & Purdy, LLP* (2019) 30 Cal.App.5th 1087, 1098 ["Tax returns are privileged from disclosure."].)

23

access."]; *Copley Press v. Superior Court* (1998) 63 Cal.App.4th 367, 376 ["[W]e find no authority that the amount of money a person receives in judgment or court-approved settlement as the result of tortious conduct is confidential.  The fact of a damage award, whatever size, is not in itself a private fact deserving protection and secrecy in public education is not in the public interest.  The settlement amount is not a trade secret, within a privilege, or likely to place anyone in 'clear and present danger of attack.'"].)

Riot points to a single sentence in the declaration filed by Emily Winkle, Riot's chief people officer, asserting disclosure of settlement terms "would impact Riot's ability to settle with other parties in the future, and would allow future parties an advantage in negotiating for similar terms."[13]  But Winkle fails to explain how disclosure of the settlement agreements would impact settlement negotiations with future employees, especially given public disclosure of the $100 million class settlement.  Riot also contends disclosure would threaten the privacy rights of its current and former employees.  Riot suggests members of the public may be able to discover the identity of the settling employees, but this is speculative given the trial court's order sealing all personal identifying information for the employees.  And, as the trial court observed, Riot made no effort to establish that any of the settling employees "wanted the settlement amounts to be kept confidential in the context of the proceedings involving [CRD] and its motions."  Riot points to no evidence to the contrary.

---

[13]  Winkle submitted the same declaration in support of Riot's first, third, and fourth motions to seal.

24

Finally, Riot argues it will suffer a competitive disadvantage if the settlement amounts are disclosed, relying on Winkle's statement in her declaration that the settlement agreements "contain sensitive business information, including but not limited to Riot's negotiation of individual settlement and severance terms with former employees, its determination of severance benefits for individual employees, and its monthly salaries for such employees."  Further, Riot argues, "[i]f this information were to become public, it would permit Riot's competitors to assess Riot's business strategy, particularly with regards to its employee compensation and benefits, and allow them to tailor their own hiring and retention strategies to more effectively compete against Riot."  But absent personal identifying information, Riot's competitors will not know how to evaluate the monthly salaries of Riot's employees.  For example, the competitors would not know the background, experience, and position of a specific employee, which would limit the usefulness of the information.

In light of the conclusory and speculative showing of harm by Riot, substantial evidence supports the trial court's finding Riot failed to show a substantial probability of prejudice to the interests of Riot or its employees.  (See *Providian, supra*, 96 Cal.App.4th at pp. 296-297 [trial court did not abuse discretion in unsealing 21 documents allegedly containing trade secrets and propriety information where declarations from defendant's vice president and consultant stated only that the documents contained "'core proprietary information'"]; cf. *Universal City Studios, Inc. v. Superior Court, supra*, 110 Cal.App.4th at p. 1286 ["fact-specific" declaration from senior vice president and controller explaining how disclosure would "cause 'competitive

25

harm' to defendant in its negotiations with competitors and customers" would have supported sealing of information but for company's public disclosure of document in other case].)

## DISPOSITION

The orders are affirmed. CRD is to recover its costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.