Filed 11/21/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JANE ROE et al., | B344378 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. 24STCV08102) |
| JENNA SMITH et al., | |
| Defendants; | |
| FIRST AMENDMENT COALITION, | |
| Movant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Frank Tavelman, Judge. Reversed.

First Amendment Clinic, Hoover Institution, Stanford University and Eugene Volokh, for Movant and Appellant.

Hathaway & Parker and Mark M. Hathaway for Plaintiffs and Respondents.

_____

Movant First Amendment Coalition (the Coalition) appeals the trial court's order granting plaintiffs' motion to proceed under pseudonyms. We conclude the trial court erred in its balancing of the public's interest in court access. Accordingly, we reverse the order as to plaintiffs.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, under the pseudonyms Jane Roe and John Doe, sued defendants, a daughter and mother, pseudonymously as Jenna Smith and Mother Smith. For ease of reference, we refer to each party by his or her pseudonymous first name.

In 2022, plaintiffs and Jenna were all students at the same high school in Los Angeles County. They were also all members of the same school club (the activities of which are only vaguely described in the complaint). At the time, plaintiffs were in a dating relationship, which continued at least through the date of the complaint. John graduated in the spring of 2022 and went on to college. Jane and Jenna continued on at the high school and in the club the following academic year.

In March 2023, Jenna began telling other students at the high school that John had sexually assaulted her and Jane. In April 2023, Mother told parents of other members of the club that John had sexually harassed Jenna.

Later in April 2023, Jane tried to purchase tickets for her and John to attend the school's prom. Without explanation, the school refused to sell a ticket for John. Shortly thereafter, John learned he was the subject of a misconduct complaint made to the school. He also received a "stay away" notice requiring him to stay away from the school and associated events.

Over the ensuing weeks, John learned Jenna had made the complaint to the school. In it, she accused him of sexually and

physically assaulting both Jane and Jenna while at the school on the same date in 2022.

The school launched an investigation, with which John voluntarily cooperated. While the investigation was ongoing, Jenna continued to tell other students John had engaged in sexual misconduct towards her and Jane. The "school rumor mill [ran] wild" with this information and plaintiffs received "dozens" of harassing and violent comments on their social media accounts. Plaintiffs allege Jenna was behind these comments.

Jane graduated in the spring of 2023 but Jenna continued to attend the school. The school's investigation into Jenna's complaint finally concluded in August 2023, finding John was "*not responsible* for any of the claims [Jenna] launched against him."

Plaintiffs allege they have suffered reputational and emotional damage because of defendants' campaign of falsehoods against them.

Plaintiffs filed their complaint in March 2024. They asserted causes of action for defamation, false light, and intentional infliction of emotional distress, and sought damages in excess of $5 million. They also sought an injunction ordering defendants to remove all defamatory posts from social media and to issue apologies to plaintiffs, and prohibiting defendants from publishing any future statements about plaintiffs whether written or verbal.

Nonparty First Amendment Coalition filed a motion to unseal plaintiffs' true names. The trial court deemed the motion "premature" because there was nothing to unseal—plaintiffs had simply filed pseudonymously without court authorization to do so. Accordingly, it directed plaintiffs to file a motion to maintain their anonymity.

Plaintiffs immediately filed a motion to proceed under pseudonyms. No declarations or exhibits were attached. Defendants filed a similar motion, also without supporting evidence.[1]

The Coalition opposed plaintiffs' motion only, arguing there was no basis for allowing adult defamation plaintiffs to proceed pseudonymously, even if the claims arose from events occurring when the parties were minors.

The trial court granted both plaintiffs' and defendants' motions.

The Coalition timely appealed the ruling as to plaintiffs' motion only. (See Cal. Rules of Court, rule 8.104(a)(1)(A) & (c)(2).) No party has appealed the ruling on defendants' motion.[2]

## DISCUSSION

## I. The Trial Court's Order Is Appealable as a Collateral Order

Under the collateral order doctrine, an order on a collateral matter is appealable where it " 'leaves the court no further action to take on "a matter which . . . is severable from the general subject of the litigation." ' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1084 (*Smith*).) The trial court's order is appealable on this basis.

---

[1] As in *Doe v. Massachusetts Institute of Technology* (1st Cir. 2022) 46 F.4th 61, 72 (*Massachusetts Institute of Technology*), there is no indication in the record that any of the four parties have ever identified themselves, even under seal.

[2] For that reason, we express no opinion on the propriety of the order granting defendants' motion to proceed pseudonymously.

4

Orders concerning the sealing of documents are appealable as collateral orders. (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 481, fn. 2.) This is true whether the order is to seal or to unseal. (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1064 (*Oiye*).) An order to redact a document is also appealable as a collateral order. (*Smith, supra,* 208 Cal.App.4th at pp. 1083–1084.)

While there is no specific case applying this rule in the context of an order allowing a party to proceed under a pseudonym, we conclude the reasoning is the same. "Much like closing the courtroom or sealing a court record, allowing a party to litigate anonymously impacts a First Amendment public access right." (*Department of Fair Employment & Housing v. Superior Court* (2022) 82 Cal.App.5th 105, 111 (*Department of Fair Employment & Housing*).) Here, the order is final on the collateral matter of allowing the parties to proceed with pseudonyms and is not subject to future proceedings.

## II. Standard of Review

The parties disagree about the standard of review. Plaintiffs claim the standard is abuse of discretion, citing *Oiye, supra,* 211 Cal.App.4th at page 1067[3] and *In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1079. The Coalition argues the standard is de novo, citing *Department of Fair Employment & Housing, supra,*

---

[3] Although *Oiye* noted this standard applied in a different case (*Oiye, supra,* 211 Cal.App.4th at p. 1067), it followed *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1021 (*Jackson*) in performing an independent review because there were no disputed facts (*Oiye,* at pp. 1067–1068).

82 Cal.App.5th at page 112 and *Jackson*, *supra,* 128 Cal.App.4th at page 1021.

The standard of review for an order granting a motion to proceed pseudonymously depends on what the court is being asked to review. Cases have cited multiple standards when reviewing an order to seal, or unseal, part of a record. (See, e.g., *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 299 ["[T]he factual determinations [whether the documents constitute trade secrets] made by the trial court must be upheld if they have the support of substantial evidence, and his ultimate decision to unseal must be sustained unless we decide that the trial court abused the discretion granted it by [California Rules of Court,] [former] rule 243.1(d)"].) Even when the standard of review is abuse of discretion, such an abuse can be found when the court's factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) And " 'in cases raising First Amendment issues[,] an appellate court has an obligation to "make an independent examination of the whole record" in order to make sure that "the judgment does not constitute a forbidden intrusion on the field of free expression." ' " (*Jackson, supra,* 128 Cal.App.4th at p. 1020, quoting *Bose Corp. v. Consumers Union of U.S., Inc.* (1984) 466 U.S. 485, 499; see also *Department of Fair Employment & Housing, supra,* 82 Cal.App.5th at p. 112 ["Our review of the decision to deny a request to proceed under a pseudonym involves a constitutional question, and we therefore use our independent judgment to determine whether the trial court's ruling is correct."].)

Our record contains no declarations or other evidence from which the trial court could engage in factfinding. Instead, this

6

appeal concerns a pure application of law, and constitutional law at that. We exercise independent review.

## III. Legal Principles

### A. Public Right of Access to the Courts

The right of public access to court proceedings is implicated when a party is allowed to proceed anonymously. (*Department of Fair Employment & Housing, supra,* 82 Cal.App.5th at p. 110.) The right of the public to attend criminal trials is guaranteed by the First Amendment. (*Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555, 580.) That right extends as well to civil cases. (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1207–1208 (*NBC Subsidiary*).)

"Public access to court proceedings is essential to a functioning democracy." (*Department of Fair Employment & Housing*, *supra,* 82 Cal.App.5th at p. 110.) "[T]he public has an interest, in *all* civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in ordinary civil cases," not merely those in which the public is a party, or which generate public concern. (*NBC Subsidiary, supra*, 20 Cal.4th at p. 1210.) Public access to courtrooms in civil matters serves to: "(i) demonstrate that justice is meted out fairly, thereby promoting public confidence in such governmental proceedings; (ii) provide a means by which citizens scrutinize and check the use and possible abuse of judicial power; and (iii) enhance the truthfinding function of the proceeding." (*Id.* at p. 1219.)

"If public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism. For this reason traditional Anglo-American jurisprudence distrusts secrecy in judicial proceedings

7

and favors a policy of maximum public access to proceedings and records of judicial tribunals." (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 784 (*Hearst*).)

"[W]hen individuals employ the public powers of state courts to accomplish private ends, . . . they do so in full knowledge of the possibly disadvantageous circumstance that the documents and records filed [therein] will be open to public inspection." (*Hearst, supra,* 67 Cal.App.3d at p. 783; see also *NBC Subsidiary, supra,* 20 Cal.4th at p. 1211 ["[A] trial court is a public governmental institution. Litigants can certainly anticipate, upon submitting their disputes for resolution in a public court . . . , that the proceedings in their case will be adjudicated in public."].)

After the Supreme Court's decision in *NBC Subsidiary*, the Judicial Council adopted two rules concerning the sealing of trial court records, currently rules 2.550 and 2.551 of the California Rules of Court. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 68.) Those rules incorporate the ruling in *NBC Subsidiary* that, before court records can be sealed, the court must expressly find facts establishing that: "(1) [t]here exists an overriding interest that overcomes the right of public access to the record; (2) [t]he overriding interest supports sealing the record; (3) [a] substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; (4) [t]he proposed sealing is narrowly tailored; and (5) [n]o less restrictive means exist to achieve the overriding interest." (Cal. Rules of Court, rule 2.550(d).)

### B.     Proceeding Pseudonymously

"[T]he right to access court proceedings necessarily includes the right to know the identity of the parties." (*Department of Fair Employment & Housing, supra*, 82 Cal.App.5th at p. 111.) While

plaintiffs correctly point out that parties have proceeded pseudonymously in many California cases, few appellate cases have addressed the issue. "[C]ases are not authority for issues not raised or decided." (*Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1607.) Indeed, until *Department of Fair Employment & Housing*, no California court had "articulated the standard that applies to determine whether a party may proceed anonymously absent statutory authorization." (*Department of Fair Employment & Housing,* at p. 110.)

In *Department of Fair Employment & Housing*, the court recognized the constitutional issues noted above and held that, before authorizing a civil litigant to use a pseudonym, the trial court must apply the "overriding interest test" outlined in *NBC Subsidiary* and California Rules of Court, rule 2.550(d). (*Department of Fair Employment & Housing*, *supra*, 82 Cal.App.5th at p. 111.) The court further held that "[i]n deciding the issue the court must bear in mind the critical importance of the public's right to access judicial proceedings. Outside of cases where anonymity is expressly permitted by statute, litigating by pseudonym should occur 'only in the rarest of circumstances.' " (*Id.* at pp. 111–112, citing *NBC Subsidiary, supra,* 20 Cal.4th at p. 1226.)

The *Department of Fair Employment & Housing* court concluded that although the trial court applied the correct standard in deciding the issue, it erred by "not considering relevant evidence likely to affect the answer," that is, the plaintiff's concern about safety of family members in his native India. (*Department of Fair Employment & Housing, supra,* 82 Cal.App.5th at p. 112.) The case involved an employee's claim of discrimination based on his Indian social caste. (*Id.* at p. 108.) In

9

support of the employee's request to proceed with a pseudonym, the plaintiff presented "evidence that in India violence is regularly perpetrated against people considered to be of lower caste status, and the employee has family members who live there and could be in danger if their caste status became known." (*Id.* at p. 109.)

The Court of Appeal held the risk of retaliatory harm to family members, wherever they may be located, is "precisely the kind of interest that may justify allowing a party to litigate under a pseudonym." (*Department of Fair Employment & Housing, supra,* 82 Cal.App.5th at p. 112.) The court remanded the matter, directing the trial court to reconsider the issue in the context of the "overriding interest test," while "tak[ing] into account all [other] considerations relevant to determining whether the public's right of access is outweighed by the employee's privacy interest . . . ." (*Id.* at p. 113.)

We agree with the *Department of Fair Employment & Housing* court that trial courts faced with a motion to proceed pseudonymously should apply the "overriding interest test" outlined in *NBC Subsidiary* and California Rules of Court, rule 2.550(d). (*Department of Fair Employment & Housing, supra,* 82 Cal.App.5th at p. 111.) And in evaluating whether a party has adequately shown an overriding interest that overcomes the right of public access guaranteed by the First Amendment, courts may consider both state and federal authorities, depending on the facts presented. (*People v. Bradley* (1969) 1 Cal.3d 80, 86 [though not binding, the opinions of lower federal courts on federal issues are persuasive and entitled to great weight].)

Courts in California have recognized at least two interests relevant here as potentially sufficient to allow for redaction of names. These are: first, maintaining privacy of highly sensitive

10

and potentially embarrassing personal information (*In re M.T.* (2024) 106 Cal.App.5th 322, 336–341 (*M.T.*) [records revealing gender identity change]; *Oiye, supra,* 211 Cal.App.4th at p. 1068 [medical and psychological records]); and second, protecting against the risk of retaliatory harm (*Department of Fair Employment & Housing, supra,* 82 Cal.App.5th at p. 112).[4] These interests have also been recognized in the Ninth Circuit. (See *Does I through XXIII v. Advanced Textile Corp.* (9th Cir. 2000) 214 F.3d 1058, 1067 (*Advanced Textile*).)

The *Advanced Textile* court further held that in cases where anonymity is requested to protect against retaliation, the trial court should consider the following factors: (1) the severity of the threatened harm; (2) the reasonableness of the movant's fears; and (3) the movant's particular vulnerability to such retaliation (e.g., child or inmate plaintiffs). (*Advanced Textile, supra,* 214 F.3d at p. 1068.)

The *Advanced Textile* court also held that the trial court should consider, presumably no matter what the interest identified is, the precise prejudice at each stage of the proceedings to the opposing party, and whether the public's interest in the case would be best served by requiring the litigants to reveal their identities. (*Advanced Textile, supra,* 214 F.3d at p. 1068.)

The Ninth Circuit concluded the trial court erred in failing to consider the plaintiffs' evidence, submitted with the motion, of threatened arrests, deportation, prosecution and imprisonment by the Chinese government against the plaintiffs and their families

---

4    This is not an exhaustive list. (See, e.g., *Jackson, supra,* 128 Cal.App.4th at p. 1023 [affirming the sealing of names and details of Jackson's alleged sexual misconduct with two minors].)

should their identity in that wage case become known. (*Advanced Textile*, *supra*, 214 F.3d at pp. 1065, 1069.)

Other Federal Courts of Appeals in other circuits have identified similar lists of factors to consider. (See, e.g., *In re Sealed Case* (D.C. Cir. 2019) 931 F.3d 92, 97; *Sealed Plaintiff v. Sealed Defendant #1* (2d Cir. 2008) 537 F.3d 185, 190 (*Sealed Plaintiff*); *James v. Jacobson* (4th Cir. 1993) 6 F.3d 233, 238; *Doe v. Frank* (11th Cir. 1992) 951 F.2d 320, 323.)[5]

A recurring theme in the caselaw is that a party's possible personal embarrassment, standing alone, does not justify concealing their identity from the public. (See, e.g., *Doe v. Frank, supra,* 951 F.2d at p. 324; *Company Doe v. Public Citizen* (4th Cir. 2014) 749 F.3d 246, 270 ["An unsupported claim of reputational harm falls short of a compelling interest sufficient to overcome the strong First Amendment presumptive right of public access."].)

## C. Pseudonyms in Defamation Cases

Some opinions have applied these considerations in the specific context of defamation lawsuits, although we have located no California case arising from such a claim. In *Doe v. Doe* (4th Cir. 2023) 85 F.4th 206, 208, the plaintiff was a college student who the defendant accused of sexual assault, both publicly and in confidential Title IX proceedings. The plaintiff sued for

---

[5]     A close look at these lists of factors reveals they relate to different aspects of California's "overriding interest test," as articulated in *NBC Subsidiary* and California Rules of Court, rule 2.550. While some factors relate to potential interests, others relate more generally to whether or not the interest overcomes the public right of access, and others relate more to whether the sealing is narrowly tailored.

defamation, and the trial court denied his motion to proceed pseudonymously. The Court of Appeals affirmed, weighing six factors: (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether there is a risk of retaliatory physical or mental harm to the party or innocent nonparties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party;[6] (5) the risk of unfairness to the opposing party; and (6) the independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party. (*Doe v. Doe,* at p. 211.)

The *Doe v. Doe* court agreed with the trial court that all factors but the first weighed against protecting the plaintiff's identity. Specifically, the court agreed there is an interest in preserving privacy where the allegations concern sexual assault.

---

[6]     Courts differ in their views on which way this factor militates. Some find litigation against a private party is less deserving of protection because, while a suit against the government cannot harm the government's "reputation," a suit against private parties can, and thus private defendants who are publicly named are entitled to stand accused by the plaintiffs using their own names. (See *Southern Methodist Univ. Assn. of Women Law Students v. Wynne & Jaffe* (5th Cir. 1979) 599 F.2d 707, 713.) Other cases have found the case for anonymity weaker in the context of litigation against a public entity because members of the public have a right to know how their tax money is being spent. (See *M.M. v. Zavaras* (10th Cir. 1998) 139 F.3d 798, 803.)

13

(*Doe v. Doe, supra*, 85 F.4th at pp. 211–212.) But the plaintiff failed to provide evidence to support the second factor, other than a general fear of retaliation or embarrassment, and provided no evidence of any aggravating factors such as media exposure. (*Id.* at pp. 212–213.) The plaintiff was not a minor, so age weighed against his request. (*Id.* at pp. 214–215.) As to the fourth factor, the court found no abuse of discretion where the lawsuit was against a private party. (*Id.* at pp. 215–216.)

Overall, the *Doe v. Doe* court concluded the matter was a "garden variety" defamation case, despite the plaintiff's argument that it centered around a confidential Title IX proceeding. (*Doe v. Doe, supra,* 85 F.4th at p. 217.)[7] And the court made a final observation pertinent specifically to defamation cases: "[W]e fail to see how [the plaintiff] can clear his name through this lawsuit without identifying himself. If [the plaintiff] were successful in

---

[7] Numerous courts have agreed to conceal the identity of the plaintiffs suing their universities after having been expelled or for due process violations resulting from disciplinary proceedings for sexual assault, arising from confidential proceedings brought under Title IX of the Education Amendments of 1972, title 20 of the United States Code sections 1681 through 1688. (See, e.g., *Massachusetts Institute of Technology*, *supra*, 46 F.4th at p. 74 [the confidentiality of a Title IX proceeding may sometimes, but not always, furnish grounds for finding an exceptional case warranting pseudonymity given the detailed federal regulations and procedural rights]; *Doe v. Colgate Univ.* (N.D.N.Y. Apr. 12, 2016, No. 5:15-cv-1069 (LEK/DEP)) 2016 U.S.Dist. Lexis 48787 [complaint by the plaintiff challenging the school's Title IX investigation and his suspension].) In *Doe v. Doe,* by contrast, the plaintiff was not suing his school or attacking the findings of the Title IX investigation, but suing a private individual for defamation. (*Doe v. Doe, supra*, 85 F.4th at p. 217.)

proving defamation, his use of a pseudonym would prevent him from having an order that publicly 'clears' him. It is apparent that [the plaintiff] wants to have his cake and eat it too. [The plaintiff] wants the option to hide behind a shield of anonymity in the event he is unsuccessful in proving his claim, but he would surely identify himself if he were to prove his claims." (*Doe v. Doe,* at pp. 217–218.)

Other cases involving defamation claims are in accord. (See, e.g., *Doe v. Megless* (3d Cir. 2011) 654 F.3d 404, 410 ["to the extent the flyers publicly accused [Doe] of being a pedophile, litigating publicly will afford Doe the opportunity to clear his name in the community"]; *Doe v. Roe* (D.Colo. July 17, 2023, No. 01149-NYM-KLM) 2023 WL4562543, at p. *3 ["Plaintiff's argument that 'prevailing in this litigation would be undermined if he were required to reveal his identity,' . . . ignores that by prevailing in this litigation, Plaintiff will have proven the defamatory nature of Defendant's previous statements and will likely want to publicize his own name"]; *Doe v. Bogan* (D.D.C. 2021) 542 F.Supp.3d 19, 23; *DL v. JS* (W.D.Tex. Nov. 21, 2023, No. 1:23-CV-1122-RP) 2023 WL 8102409, at p. *3.)

Conversely, there are few cases allowing a plaintiff alleging defamation to proceed under a pseudonym. In *Employee #1 v. Department of Behavioral Health* (D.D.C. 2023) 694 F.Supp.3d 110 (*Employee #1*), the plaintiff was the charge nurse at a mental hospital on the night one patient murdered another. (*Id.* at p. 113.) A public report accused the plaintiff of gross neglect, and he sued his employer, the report's author, and other defendants for numerous claims, including conspiracy to defame him. (*Ibid.*) In support of his motion to proceed under a pseudonym, he contended, among other things, that public disclosure of his name would

15

subject him and his family to risk of harm from the murder suspect, whose case was still pending, noting that the suspect had already assaulted him when he interrupted the suspect in the act of killing a victim. (*Ibid.*) After weighing five different factors, the court found that three (including risk of retaliatory physical or mental harm) justified sealing and granted the motion. (*Id.* at pp. 114–115.).

## IV. Application of the Law to the Facts Here

We first note that no declarations or exhibits were submitted here; rather the parties made argument solely based on the pleadings. This deprived the court of sworn evidence from which to determine whether it is the rare case that may justify proceeding anonymously. (See *Department of Fair Employment & Housing, supra*, 82 Cal.App.5th at p. 112 [in conducting a hearing on a party's request to proceed anonymously, the trial court must consider the *evidence* produced on each point and assign it the appropriate weight]; Cal. Rules of Court, rule 2.550(d)(1) [court must "expressly find[] facts"].) However, we do not go so far as to hold such evidence is absolutely required, as there may be rare cases where the evidence to be sealed is of such an obviously private or sensitive matter, and the risks in its disclosure so broadly understood, that a trial court can make the necessary findings without additional evidence beyond the matter to be sealed. (See *Jackson, supra*, 128 Cal.App.4th at pp. 1015–1017, 1021 [no testimony taken where argument was over the risks of pretrial publicity, harm to minors, and threat to an ongoing investigation of allowing public access to contents of grand jury transcript, indictment, and search warrant affidavits concerning allegations of child abuse by famous defendant].) Thus, we proceed to analyze whether the record supports the court's ruling.

16

The trial court, in relying on both *Department of Fair Employment & Housing* and *Advanced Textile*, generally applied the correct standard. However, it did not properly apply the standard to the limited record before it and failed to accord due weight to the right of public access.

The trial court held plaintiffs' interest in remaining anonymous related to matters which are "highly sensitive and personal." It also concluded, "Plaintiffs' fear that future employers, among others, may discover the allegations [was] well founded."

We agree the allegations in the complaint pertain to highly sensitive and private matters: specifically, John's allegations he was wrongly accused of sexual misconduct while in high school; and Jane's allegations she was wrongly identified as a nonconsensual partner of John's during that time. Allegations concerning sexual conduct do fall into the category of highly sensitive and private matters, the more so because the parties were minors at the time.

But that is merely the first step in the overriding interest test. Next, the court must find that the interest of privacy in highly personal and sensitive matters overcomes the public's right of access. We conclude there is insufficient evidence to support the trial court's conclusion that it did. We take plaintiffs' contentions to the contrary one at a time.

First, there was no evidence of serious mental or physical harm that would occur to plaintiffs should their identity be revealed. To the extent the trial court concluded that a reasonable fear of one's employer learning about allegations of a private nature overcame the public's right of access, we disagree. To state the obvious, the fear that a future employer might learn about the lawsuit through an Internet search is not the equivalent

17

of a fear of violence to one's family members (as in *Department of Fair Employment & Housing, supra,* 82 Cal.App.5th at p. 109), deportation and arrest (as in *Advanced Textile*, *supra*, 214 F.3d at pp. 1065, 1069), violence, harassment and discrimination against transgender people (as in *M.T., supra,* 106 Cal.App.5th at p. 343), or violence against a witness in a murder case (as in *Employee #1, supra*, 694 F.Supp.3d at p. 114).

Rather, the fear argued here is precisely the kind of reputational harm cases have routinely held is insufficient to allow a party to proceed anonymously. (*Doe v. Doe*, *supra*, 85 F.4th at p. 213; *Doe v. Bogan, supra,* 542 F.Supp.3d at p. 23 ["The allegations in defamation cases will very frequently involve statements that, if taken to be true, could embarrass plaintiffs or cause them reputation harm. This does not come close to justifying anonymity, however . . . ."].)

At the least, conclusory allegations, such as were stated here, are insufficient to support an overriding interest to protect plaintiffs from harm. In their motion and on appeal, plaintiffs made generalized arguments about possible harm and the risk to their future academic and career prospects of proceeding publicly, citing neither evidence nor allegations in the complaint. Jane's main contention is she would "forever be stigmatized as a person who remains in a relationship with a person who sexually assaulted her and another female student . . . ."

These arguments are plainly insufficient, as wholly conclusory fears of reputational and economic injury do not outweigh the public's substantial and presumptive interest in disclosure. Indeed, fear of harm to one's reputation applies to a great number of cases, including virtually any defamation case. By definition, a claim for defamation involves an allegedly harmful

18

falsehood that has been published to third parties. (Civ. Code, §§ 44–46.) This justification, when (as here) unsupported by more than arguments based on unproven allegations, would swallow the rule and cannot be squared with the judicial refrain that proceeding under a pseudonym should only be allowed in the "rare" case.[8]

Second, plaintiffs here were not minors at the time they filed this lawsuit. While they were minors for a portion of the underlying events, they are not anymore. Thus, allowing a pseudonym here would not protect any minors, which is an interest distinct from protecting private or sensitive information. (See *Advanced Textile, supra,* 214 F.3d at p. 1068 [considering age of the plaintiff separately from other factors]; *Doe v. Doe, supra*, 85 F.4th at p. 211 [same]; *Sealed Plaintiff, supra*, 537 F.3d at p. 190 [same].)

Third, the trial court's conclusion that knowledge of the events was "confined to a relatively small number of people" is unsupported by the record. The court stated, "While [Jenna] is alleged to have publicized her allegations on social media, nothing before the Court indicates that these posts caused awareness of the issues beyond the parties' friends/associates and school. There is nothing in the record to indicate that this dispute has gained notoriety such that Plaintiffs do not maintain a reasonable expectation of privacy." In fact, there was nothing before the trial

---

[8] Plaintiffs' argument that disclosing their names would increase their risk of physical harm or other retaliation from defendants is unsupported. Since defendants already know who plaintiffs are, allowing plaintiffs to proceed pseudonymously would not protect against an alleged danger from defendants learning their identity.

court either way on this issue, as the court could only parse the complaint and the arguments of counsel in the briefs.

Even if the trial court had taken such evidence, this factor is at best neutral. Since the allegedly defamatory comments were already on the Internet, they were in the public record. Moreover, parties generally lose their reasonable expectations of privacy when they file a civil lawsuit. (*In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1063 [parties who come to court, voluntarily or not, are not entitled to privacy in respect of court records that are presumptively public].)

Indeed, some courts have held the lack of significant media attention is a factor *against* proceeding anonymously, since there is a greater chance of harm from identifying the parties when the case is in the public eye. (See *Doe v. Doe, supra,* 85 F.4th at p. 212 [no aggravating factors such as media exposure that would endanger the plaintiff if his identity was known]; *Doe v. The Rector & Visitors of George Mason Univ.* (E.D.Va. 2016) 179 F.Supp.3d 583, 593 [evidence of extensive media interest cited as factor supporting proceeding under a pseudonym].)

Fourth, this is a case against two private individuals, not against a school or a government entity, such as in the particularly confidential Title IX context.[9]

---

[9] There is no support for plaintiffs' argument that the complaint's allegations are "bound up" within a confidential school investigation. First, no such evidence was filed and nothing in the complaint indicates the school's investigation was confidential. Even if it were, there is no explanation as to why a protective order, commonly used in litigation, would not have sufficed. (See *NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1218 [must show "there is no less restrictive means of achieving the overriding interest"].)

Fifth, there is no basis to proceed anonymously because the injury litigated against would be incurred as a result of the disclosure of the party's identity. The cases that have recognized such an interest are cases seeking to enjoin a disclosure of private facts. (See, e.g., *Doe v. City of N.Y.* (2d Cir. 1994) 15 F.3d 264, 269 [the plaintiff did not give up right to privacy by filing lawsuit against a governmental entity over unauthorized disclosure of HIV status]; *Doe v. Bonta* (S.D.Cal. Jan. 20, 2022, No. 22-cv-10-LAB (DEB)) 2022 U.S.Dist. Lexis 10965, at p.*5 [allowing use of pseudonyms in lawsuit challenging statutory disclosure of the identity of applicants for concealed carry permits].) Here, by contrast, the plaintiffs are suing for damages based on comments which have already been made. (See *Luo v. Wang* (10th Cir. 2023) 71 F.4th 1289, 1300 [concluding the injury a defamation plaintiff litigated against would not be incurred because of the disclosure of her identity].) To hold otherwise would effectively permit all defamation plaintiffs to proceed by way of pseudonym.

Sixth, that defendants already know plaintiffs' identities is, at best, neutral in this case as it cuts both ways. On the one hand, defendants did not contend that using a pseudonym would hamper their ability to conduct discovery or have a fair trial. On the other hand, unmasking plaintiffs would not subject them to an increased risk of harm by defendants.

Seventh, we reject plaintiffs' argument that requiring them to use their real names would discourage "similarly situated" litigants from bringing defamation cases. We do not see a principled basis to distinguish such a concern in this case from any other defamation case. To accept such a rationale here would equip all defamation plaintiffs with the same argument. To the contrary, courts have expressed a reluctance to allow defamation plaintiffs

the option to remain anonymous until they know the outcome of their case.

This case illustrates the tension inherent in proceeding anonymously in a defamation case. On the one hand, plaintiffs claim to have sued to "disassociate their names" from damaging and untrue allegations. Yet they argue if their true identities became known, any ultimate success in the matter would be negated by disclosure of their names. As other courts have noted, this rationale does not make sense in the context of a plaintiff who has filed a defamation claim. (See *Doe v. Doe, supra*, 85 F.4th at p. 217 ["we fail to see how [the plaintiff] can clear his name through this lawsuit without identifying himself"].)

Eighth, there is insufficient evidence that revealing plaintiffs' identities would unmask Jenna's in a related action. Jenna, whose interest is at stake, did not make this argument. And plaintiffs made it only by reference to an order outside the record and with no supporting caselaw. We treat the argument as forfeited. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 [litigant has an obligation to "supply the reviewing court with some cogent argument supported by legal analysis . . . ."].)

The trial court concluded that plaintiffs' privacy interests outweighed the public interest in court proceedings, noting their request was to seal only their names, not the entire proceedings. The trial court concluded that since the public interest in the identity of the parties is "likely nominal at best," the public interest was overridden by plaintiffs' privacy interests.

The record does not support the trial court's conclusion. The public has a fundamental interest in knowing the identities of parties to litigation in public fora. Such information is essential to

22

monitoring public proceedings for a host of evils, including corruption, incompetence, inefficiency, prejudice, and favoritism. (*Hearst, supra*, 67 Cal.App.3d at p. 784; see also *Doe v. Blue Cross & Blue Shield United of Wisconsin* (7th Cir. 1997) 112 F.3d 869, 872 ["Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts."].)

The trial court understandably credited the privacy concerns of plaintiffs, particularly given they were agreeable to having defendants' names kept out of the pleadings as well. But there is a third stakeholder whenever a party seeks to close any portion of a court record, whether or not represented by a group like the Coalition: the public. Just as a court cannot seal documents solely because both parties agree (Cal. Rules of Court, rule 2.551(a)), a court must be vigilant to protect the public's right of access even when the parties themselves agree to proceed pseudonymously.

## V.     Conclusion

In summary, the use of pseudonyms, absent a specific statutory authorization, should be a limited and rare exception to the general rule of public access to courts. Before allowing a party to litigate under a pseudonym, the trial court must expressly find facts establishing an overriding interest that overcomes the right of public access to court records, and find a substantial probability that interest will be prejudiced if a pseudonym is not used. (See Cal. Rules of Court, rule 2.550(d)(1)–(3).)

The trial court must also find use of the pseudonym is narrowly tailored to serve the overriding interest, and there is no less restrictive means of achieving the overriding interest. (See Cal. Rules of Court, rule 2.550(d)(4)–(5).)

23

In performing the analysis under California Rules of Court, rule 2.550(d), courts may rely upon factors set forth in relevant federal cases for their persuasive value. What factors are relevant, the weight to which they are entitled, and even which way they cut, may depend on the precise interest and circumstances identified in each case. While defamation plaintiffs are not categorically foreclosed from proceeding pseudonymously, they are generally ill suited to do so; courts should require a robust evidentiary showing in such a case.

In most cases, a party seeking to proceed pseudonymously should provide evidence supporting his or her motion to allow the trial court to make "[e]xpress factual findings" on the matter. (Cal. Rules of Court, rule 2.550(d).) And to enable the court to conduct a recusal check, the party seeking to use a pseudonym should provide the parties' real names under seal.

## DISPOSITION

The order granting plaintiffs the right to proceed under a pseudonym is reversed. The parties are to bear their own costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(5).)


RICHARDSON, J.

WE CONCUR:

LUI, P. J.


CHAVEZ, J.

24